# Ottersbach, Appellant, *v.* Philadelphia.

|161  111·|
|171   67|

| 161 | 111 |
| 29 SC | 106 |

*Negligence—Municipality—Death by inhalation of gas—Contributory negligence.*

In an action against a city to recover damages for the death of plaintiff's son caused by inhaling gas which escaped from a broken pipe in the street and flowed into plaintiff's house, it is proper to submit the case to the jury where the evidence shows that the proper city authorities were duly notified of the fact that gas was escaping, and that they neglected for several days to locate the leak, and replace the broken pipe.

Plaintiff's son, a boy fifteen years of age, was asphyxiated by illuminating gas escaping from a broken pipe in the street into an outbuilding. The owner of the premises was an uncle of the boy, and the evidence was uncontradicted that for two weeks prior to the accident the uncle knew of the presence of gas in the outbuilding. The evidence was uncertain as to plaintiff's knowledge of the leak and the character of it. *Held,* that the question of contributory negligence was for the jury.

Argued March 21, 1894.    Appeal, No. 173, Jan. T., 1894, by plaintiff, Margaret Ottersbach, from judgment of C. P. No. 1, Philadelphia Co., March T., 1893, No. 162, entering nonsuit. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.    Reversed.

Trespass for death of plaintiff's son.

At the trial it appeared that, on Jan. 24, 1893, plaintiff's son, a boy about fifteen years old, was asphyxiated by illuminating gas escaping from a broken pipe into an outbuilding. The boy and his mother lived with the boy's uncle at the corner of Diamond and Palethorp streets. The uncle was the owner of the premises.

It was proven that, for about two weeks before the accident, a smell of gas, at times greater than at others, had been noticed by the uncle in this backhouse, in which there was no window. The door was closed when the boy was found.

The uncle testified that he had noticed the smell over two weeks before the accident; that on the Sunday previous thereto he and his wife had been affected by it. No complaint was made by him, however, to the city authorities. He thus testified concerning a call at the house, by a man named Gibson, employed by the gas department of the city: " On Jan. 19, on

Tuesday, and between nine and ten o'clock, was my time to go out collecting, and as I was going out I met him; I seen him open the street in two different places. The first I noticed of it they were smelling round the vents in the neighborhood. They were smelling there to trace it, and as I came out I told the gentleman. I says, 'Just go in that water-closet and you will find plenty of gas,' and he followed suit, and when he was in there he used those words; he says, 'Don't strike no match and don't take no candle in there or it will blow up,' and I called my wife out at the same time and I gave her notice then what the gentleman had said, and he told her the same thing, and then I says to him—I explained the case to him, because the odor was more than bearable; I could hardly stand it. I wouldn't have complained, but he just happened to come up there. I told him then to follow it up; he says, 'I haven't got the time; I have got to go somewheres else; but,' he says, 'there will be a tracing gang sent here to-morrow'—that was on Wednesday—'and they will follow that up until they find it.' I then said, 'I wish you would.' Q. You were going on to tell us what took place between you and Mr. Gibson? A. Yes, sir. I related the affair at home— that is, my wife and myself—and then I told him, I think, three times to attend to it. I asked them how soon it would be attended to. He said, 'I won't be in before four o'clock, but there will be a tracing gang round here to-morrow morning, because there is lots of gas around here that ought to be attended to,' and I asked him then if he thought it was illuminating gas, and he said yes. By Mr. Johnson. Q. Did the tracing gang come? A. No."

The aunt was present when Gibson called, and testified that all he said was, "We should not strike a match in the closet nor put no paper in, because it would set on fire and explode."

Plaintiff testified that she had never heard that any notice had been given not to go into the water-closet. She also testified as follows: "Q. Did you notice any odor around that place at the time? A. The gas? Q. Yes. A. Yes, sir. Q. What sort of smell was it? A. It wasn't sewer gas; it was burning gas. Q. Tell us about the smell you noticed—how great it was and so forth? A. Well, it was for two weeks, about, that we had the smell in the water-closet, but certainly we didn't

think it would do the damage that it did do, but then it was sometimes greater than other times. . . . Q. Had you noticed the smell anywhere excepting in the outhouse?  A. No, only in the outhouse."

The court entered a compulsory nonsuit and subsequently refused to take it off.

*Error assigned* was refusal to take off nonsuit.

*John G. Johnson*, for appellant.—The city was negligent in its action, after complaint had reached the proper authorities of the fact of an escape of illuminating gas.

There was no evidence of contributory negligence which justified the taking of the case from the jury: Rapho Twp. v. Moore, 68 Pa. 406; Allentown v. Kramer, 73 Pa. 498; Vanderslice v. City, 103 Pa. 107; McLaughlin v. Corry, 77 Pa. 109; Smith v. Boston Gas Light Co., 129 Mass. 318; Holly v. Boston Gas Light Co., 8 Gray, 125; 1 Thompson on Negligence, 110; Lanigan v. New York Gaslight Co., 71 N. Y. 29; Mose v. Gas Co., 4 F. & F. 324; Kibele v. Phila., 105 Pa. 41; Koelsch v. Phila., 152 Pa. 362.

*Howard A. Davis, Charles F. Warwick* with him, for appellee.—Defendant was not negligent: Fritsch v. Allegheny, 91 Pa. 226; Rapho Twp. v. Moore, 68 Pa. 404; Sh. & Red. Neg., § 148; Otto Township v. Wolf, 106 Pa. 608; Strawbridge v. City, 2 Penny. 419; Vanderslice v. City, 103 Pa. 102; Hunt v. Lowell Gas Light Co., 1 Allen, 343.

Decedent or plaintiff was guilty of contributory negligence and a nonsuit was properly entered: Kibele v. Phila., 105 Pa. 45; Oil City Gas Co. v. Robinson, 99 Pa. 1; Lanigan v. New York Gaslight Co., 71 N. Y. 29; Hoag v. R. R., 85 Pa. 293; Cougle v. McKee, 151 Pa. 602.

OPINION BY MR. CHIEF JUSTICE STERRETT, April 9, 1894:

It was admitted that the death of plaintiff's minor son resulted from asphyxia caused by inhaling illuminating gas, which, as the testimony tends to show, escaped from defendant's broken gas pipe in the street at the corner of Diamond and Palethorp streets.  Without referring in detail to the uncon-

tradicted testimony tending to prove that the proper city authorities were duly notified of the fact that gas was escaping at that point, and that they neglected for several days to locate the leak and replace the broken pipe, 'etc., it is sufficient to say that the evidence introduced by the plaintiff, if believed by the jury, presented a case of inexcusable and protracted neglect of duty, on the part of defendant, resulting, as the jury would have been warranted in finding, in the death of plaintiff's son. The duty of promptly locating and stopping the leak was one that devolved solely on the proper authorities of the city.    No one else had any right to interfere with the gas pipe, or open the street for the purpose of locating or stopping the leak. That this was their duty, and theirs alone, is a proposition too plain to need either argument or citation of authorities.    It cannot be seriously contended that there was any lack of competent and sufficient proof of defendant's negligence, as the proximate cause of the boy's death, etc., to carry the case to the jury on that question of fact.

But it is contended that plaintiff and her son were both guilty of contributory negligence, and on that ground, if no other, the learned court was warranted in refusing to take off the judgment of nonsuit.    We cannot assent to this proposition.    Conceding, for the sake of argument only, that there is some evidence of such contributory negligence, an examination of the testimony has satisfied us that it is not of such a character as warranted the court in virtually declaring, as matter of law, that either the plaintiff or her son was guilty of negligence which contributed to the death of the latter.    In view of all the evidence, we think the case involved questions of fact which were clearly for the exclusive consideration of the jury, and to them it should have been submitted with proper instructions as to the law applicable thereto.

Judgment reversed and a procedendo awarded.