# Walter A. Rumsey *v.* City of Philadelphia, Appellant.

171        63
29 SC ¹105
171        63
f 33 SC ¹ 25

[Marked to be reported.]

*Negligence—Municipalities—Leak in water pipe—Notice—Question for jury.*

Where water leaks from a water pipe exclusively within the control of a municipality, and property is injured thereby, and the proper municipal officers are notified of the leak, who make intermittent efforts to find it, and finally locate it twenty-eight days after the first notice was given, the question as to whether the efforts to locate and stop the leak were prosecuted with due diligence, or were negligently conducted, is a question for the jury.

In such a case the Supreme Court will not reverse a judgment in favor of the property owner, because the trial judge said to the jury: " They (the city) have the whole control of this water department, and it is for you to say whether or not you think that it is negligence on their part not to have such a record at their own works as to enable them to locate a leak."

Argued April 1, 1895.   Appeal, No. 182, Jan. T., 1895, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1893, No. 98, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.   Affirmed.

Trespass to recover damages for injuries caused to a house by water leaking from a water pipe belonging to the city. Before BIDDLE, J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

It appears that when the leak was discovered it arose from a service pipe, that is a pipe .taken from the main pipe.   The main pipe goes down the street, and a man who wants to attach to it applies to the water department, and they put in a ferrule to enable the water to come to him.   When it comes to him, he of course pays his taxes to the water department for it. Now it was found that the whole trouble arose from this service attachment from the main pipe, and it is contended that the city ought to have such a knowledge of the direction and the location of those pipes which could not be put in without their assent—they actually put them in themselves—that they ought to know when an accident occurs to the water arrange-

ments in that locality where they are; but it appears that they kept no such record, and they were just as ignorant as Mr. Rumsey that any such pipe existed there at all, and it was only discovered, not from any means in their power, but by stopping off the various mains; of course that indicates that it must be within a certain range, and they found it.

Now it is contended that that also is an evidence of negligence on the part of the city. [(They have the whole control of this water department, and it is for you to say whether or not you think that it is negligence on their part not to have such a record at their own works as to enable them to locate a leak.) Those are the two questions for you to decide in this case.] [1]

Defendant's point was as follows :

Under all the evidence in this case your verdict should be for defendant. *Answer :* The Court : I refuse that point. [2]

Verdict and judgment for plaintiff for $1,717.10. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*Howard A. Davis, Charles F. Warwick* with him, for appellant.—In order to hold the city liable in this case the burden is upon the plaintiff to show negligence either in the performance or nonperformance of a duty incumbent upon the municipality. This the plaintiff has failed to do : West Hempfield Twp. v. Moore, 68 Pa. 404; F. & B. Turnpike Co. v. Phila. & Trent. R. R., 54 Pa. 350; Burns v. Bradford, 137 Pa. 361; Lohr v. Philipsburg Borough, 156 Pa. 246; Lohr v. Philipsburg Borough, 165 Pa. 109; Sherman and Redfield on Negligence, sec. 148; Otto Twp. v. Wolf, 106 Pa. 608; Strawbridge v. City, 2 Penny. 410; Vanderslice v. City, 103 Pa. 102; Dillon on Municipal Corporations, sec. 949; McDade v. Chester, 117 Pa. 414, Carr v. Northern Liberties, 35 Pa. 324; Grant v. Erie, 69 Pa. 420; Ray on Negligence of Imposed Duties, sec. 31; Terry v. New York, 8 Bosworth's Rep. 504.

*A. W. Horton,* for appellee.—The city was negligent : Rapho v. Moore, 68 Pa. 404; Keolsch v. Phila. Co., 152 Pa. 355; Kibele v. Phila., 105 Pa. 41; Ottersbach v. Phila., 161 Pa. 111.

OPINION BY Mr. JUSTICE GREEN, October 7, 1895:

As we understand the testimony in this case, the leak which caused the plaintiff's injury was not in his service pipe, nor in any pipe for which he was in any way responsible, or over which he had any kind of control. On the contrary the affirmative, and really undisputed proof is that it occurred at some point in the pipe extending up Forty-first street which was joined to the main pipe which terminated in a dead end at Forty-first street and Westminster avenue. In some way not very definitely explained the water escaped from that extended pipe and found its way into the plaintiff's cellar. Of course the plaintiff had no control over any part of the extended pipe, but the city had exclusive control over the main, and over the extended pipe which started from the dead end. Consequently the city alone was responsible for the condition of this pipe and hence was alone responsible for the leakage from it. When the water was stopped off from the extended pipe by withdrawing the ferrule which connected it with the main pipe the leakage ceased, and this demonstrated that the leakage which entered the plaintiff's cellar came from that pipe.

Now the plaintiff notified the city of the leak on October 7, and the proper officials came promptly from the water department to investigate the complaint and stop the leak. After working awhile at it they ceased further effort but did not stop or find the leak. More efforts were made in the same direction after other notices from the plaintiff, but without success, until finally the plaintiff's plumber induced the city superintendent to intervene and he succeeded in discovering and locating the leak and stopped it on November 4, which was twenty-eight days after the first notice of the leak was given to the authorities by the plaintiff.

Whether the efforts to locate and stop the leak were prosecuted with due diligence or were negligently conducted was a pure question of fact which was necessarily submitted to the jury. By their finding for the plaintiff this fact was determined against the city. We can discover no error in the manner of submitting this question by the learned court below. The court said in the charge, " The authorities were notified in this case and they came there, and the question is whether they did all that ought to have been done to locate this leak and stop

it. That is one of the principal questions for you to decide here. Do you find in the recital of the evidence, which has been gone over by both gentlemen anything which would justify you in saying that the city had not fulfilled its whole duty in the matter?" Certainly there was no error in this. The question was fairly and impartially presented. There was plenty of testimony to raise the question and it was the clear duty of the learned court to submit it to the jury. The court could not with any propriety take the case from the jury and was therefore right in refusing the defendant's point on that subject. The only other error assigned is in what was said by the court in another part of the charge, to wit, " They (city) have the whole control of this water department, and it is for you to say whether or not you think that it is negligence on their part not to have such a record at their own works as to enable them to locate a leak." Without committing ourselves to the proposition that the methods of keeping the records of the operations of the water department may be supervised by juries, we do not think the foregoing expression of the court was of any material consequence in the determination of the real matter at issue, and even if we regarded it as erroneous we would not reverse for that reason.

There is no evidence on this record that the leak came from the plaintiff's service pipe. On the contrary it was distinctly proved, and not contradicted, that it did not. Whether it came from the defendant's extended pipe was necessarily a question for the jury, and on the evidence they could not reasonably have found that it came from any other source. What was said in this part of the charge was of practically immaterial consequence because the testimony on the chief question was so very strong and convincing. The moment the water was stopped off from entering the extended pipe, the leak ceased, after all other efforts to discover it were exhausted without any success. It is impossible to doubt the leak came from this pipe, and as it was a pipe over which the plaintiff had not the slightest control and the defendant had exclusive authority, the responsibility for its defects was cast upon the city.

In the case of Kibele v. City, 105 Pa. 41, the action was brought to recover damages resulting from the escape and explosion of illuminating gas. It was shown that the gas had

been escaping for a week or ten days before the explosion, and the question was whether that was sufficient notice to the authorities to charge the city with responsibility.   We said, GORDON, J., " It might well be supposed that within the space of a week or ten days, the proper officers ought to have discovered a gas leak, which was alike offensive and dangerous to a whole neighborhood, and it might also be supposed it was part of the business of a patrolman on discovering such a leak, to have informed those officers.   All these however were questions for the jury, and to that body this evidence ought to have been submitted."

In Ottersbach v. City, 161 Pa. 111, the plaintiff's son was asphyxiated, and died, from the escape of illuminating gas. The city was notified of the leak on January 19th, and on the 24th the boy died.   Mr. Chief Justice STERRETT in delivering the opinion said, " Without referring in detail to the uncontradicted testimony tending to prove that the proper city authorities were duly notified of the fact that the gas was escaping at that point, and that they neglected for several days to locate the leak and replace the broken pipe, etc., it is sufficient to say that the evidence introduced by the plaintiff, if believed by the jury, presented a case of inexcusable and protracted neglect of duty on the part of the defendant, resulting as the jury would have been warranted in finding, in the death of the plaintiff's son.   The duty of promptly locating and stopping the leak was one that devolved solely on the proper authorities of the city.   No one else had any right to interfere with the gas pipe, or open the street for the purpose of locating or stopping the leak."

We think all this language is entirely applicable to the present case, and that it fully justifies the charge of the learned court below.

Judgment affirmed.