INDIANAPOLIS WATER CO. *v.* SCHOENEMANN

[No. 16,037. Filed May 2, 1939. Rehearing denied October 19, 1939. Transfer denied December 12, 1939.]

*James W. Fesler, Harvey J. Elam, Howard S. Young, Irving M. Fauvre,* and *Howard S. Young, Jr.,* for appellant.

*Faust, Faust, Medias & Faust,* for appellee.

DEVOSS, J.—This action was brought by appellee against appellant to recover damages for negligence in the construction and maintenance of a curb box.

The action was founded on injuries received by appellee on the 11th day of February, 1935, in the City of Indianapolis, Indiana, when appellee tripped over a curb box. The complaint was in two paragraphs. Appellant filed an answer in two paragraphs to each paragraph of the complaint and issues were closed by replies in general denial of appellee to the second paragraphs of each answer.

No question is presented on the sufficiency of the pleadings. Trial was had by a jury, returning a verdict for appellee in the sum of $500.00. Along with the general verdict, the jury answered interrogatories propounded by appellant. The trial court overruled appellant's motion for judgment in its favor upon answers to such interrogatories, rendered judgment upon the general verdict and overruled appellant's motion for a new trial.

The first paragraph of complaint charges that appellant was engaged in supplying water in operating water lines in the city of Indianapolis, Indiana, through a system of water mains and lines constructed underground throughout the city; that one of such mains was located along Madison Avenue in said city; that as a means of turning on and shutting off water supply to patrons it caused to be constructed and maintained a water valve or plug in front of the premises at No. 2168 Madison Avenue in said city. That on the 11th day of February, 1935, and for a long time prior thereto said appellant caused to be constructed and maintained such water valve or plug and carelessly and negligently suffered and permitted said water plug or shut-off valve to extend six inches above the ground; that said shut-off valve or water plug was located two and one-half feet inside the curb line on the west side of Madison Avenue, and that on said 11th day of February, 1935, at a time when it was dark while exercising due care appellee walked against said shut-off valve and was thrown to the ground, suffering injuries, that the injuries were caused solely by the carelessness and negligence of the appellant.

The second paragraph of complaint charges substantially as the first, and alleges further that appellant negligently suffered and permitted said water

plug to extend six inches above the ground and neglected and refused to cause the same to be lowered, and further charges exclusive control of the instrumentality by the appellant and also sets out in detail the method and manner by which property owners might obtain water from appellant by service connections and the manner of installation thereof.

To each paragraph of complaint, appellant has filed an answer in general denial and a second paragraph of answer alleging that in the year 1923, the appellant accepted an indeterminate permit from the Public Service Commission of Indiana and since said time has worked under the order of said commission. That on April 1, 1932, said Public Service Commission of Indiana adopted and approved rules for the carrying on of the business of this appellant. That they were accepted and put in force by appellant and that said rules and regulations provided that stop cocks should be provided with a regulation curb box as adopted by the company (appellant), that the top of the box should be placed on a level with the grade of the sidewalk, and that the curb box should be set by the consumer's plumber, remain the property of the consumer and be maintained by him, and that appellant had no right to interfere with said curb box.

Appellant assigns as error, ''1st. The trial court erred in overruling appellant's motion for judgment on interrogatories and answers thereto. 2nd. Overruling appellant's motion for a new trial.''

It has been determined by this court and it is a familiar principle of law that judgment will be given on answers to interrogatories only in cases where there is an irreconcilable conflict between them and the general verdict, and in considering that question no reference will be made to the evidence. The general verdict must prevail over the

special findings and answers thereto, if there could have been under the issues, proof of facts, not irreconcilable with those specially found, sufficient to sustain the general verdict. In determining that question we must necessarily look to the pleadings.

The complaint charges that the appellant negligently CAUSED the construction and maintenance of the curb box. The answers to the interrogatories establish the fact the accident occurred on February 11, 1935; that appellee fell over a cut-off box which was located in a grass plot between the sidewalk and curb; that the cut-off box had been established about 1912, by a plumber employed by the property owner; that the property owner had furnished the material and labor and that the cut-off box was installed in front of a vacant lot and was never used for the delivery of water; that the Public Service Commission had approved rules relative to installation, control and maintenance of this cut-off box, that the same were in force at the time of the accident complained of; that title to the cut-off box was never conveyed to the appellant; that the cut-off box was the property of the lot owner.

There is nothing contained in the answers to the interrogatories nor is there any fact established by such answers that would preclude or would be irreconcilable to a general verdict upon the allegation in the complaint that the appellant CAUSED the negligent construction and maintenance complained of. So far as the pleadings are concerned, the appellant, notwithstanding the rule of the Public Service Commission to the contrary, and in spite of the fact that labor and materials were furnished by some one other than appellant, and that the premises were owned by some one other than the appellant, and that the curb box never was used by appellant, and that appellant never had title to said curb box, might have caused the negli-

gent construction and maintenance complained of in the complaint. We find no reversible error by the trial court in overruling appellant's motion for judgment on answer to interrogatories.

Appellant's next assignment of error is the overruling of appellant's motion for a new trial.

The causes set out in said motion are (1) the verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law; (3) error of court in giving of its own motion each of the instructions numbered 1 to 11 inclusive; (4) error of court in giving instruction No. 6 requested by appellee; and (5) error of court in refusing to give each of the instructions numbered 1, 2, 4, 5 and 7 as requested by appellant.

Appellant contends that the cut-off box over which appellee tripped was not installed by appellant, never used by it, was owned by the property owner, and that such owner, under the rules of the Public Service Commission, had the duty of maintaining it. Appellant further asserts that the obligation to maintain equipment used in connection with utility service has been established in Indiana, and that the obligation depends on the ownership of the equipment. We think this statement is too broad. The Indiana cases cited to sustain this view deal with the question of *management* and *control,* as well as ownership.

"It seems to be settled law that where the furnisher of electricity supplies the same to a customer, first through its own wires and then through the wires owned and maintained by such customer and over which the furnisher had *no supervision or control,* and an employe of the purchaser is injured by reason of the negligent manner in which the purchaser's wires are equipped and maintained, the party who merely sells the current is not liable." *The Princeton Light*

*and Power Co.* v. *Ballard, Administrator* (1915), 59 Ind. App. 345, 347, 109 N. E. 405; and cases cited therein.

With this statement of the law we agree.

In the question to be determined in the instant case, the ownership of the instrumentality involved is not the dominating factor, but only a phase to be considered in determining the question of whose duty it was to maintain the instrumentality.

"Liability for negligence does not depend upon title; a person is liable for an injury resulting from his negligence in respect of a place or instrumentality which is in his control and possession, even though he is not the owner thereof . . ." 45 C. J. 881, §317.

The evidence in this cause is practically without contradiction, except possibly as to the nature and extent of the injuries received by appellee, upon which issue nothing is presented by the appellant, and such evidence may be summarized as follows:

Appellant on the 11th day of February, 1935, and for some time prior thereto was engaged as a public utility in supplying water to the inhabitants of Indianapolis and environs, and in pursuance thereof had constructed a system of water mains underground throughout such city. On March 30, 1923, appellant accepted an indeterminate permit from the Public Service Commission of Indiana to operate as a utility in said city, and prior to said March 30, 1923, appellant had operated under a permit or franchise granted by the city of Indianapolis, which franchise was in effect on May 22, 1912. On the 1st day of April, 1932, appellant filed with said Public Service Commission a copy of its rules and regulations which rules and regulations were approved by said Commission. On May 22, 1912, Herman B. Gunneman was the owner of the premises at 2166 Madison Avenue in the city of In-

dianapolis, and on said day, by a plumber employed by him, installed a service line from the water main of the appellant to approximately two feet inside the curb line, and between the curb and property line of said premises, and installed a curb box or shut-off valve thereon which extended up to the surface of the ground. At the time of such installation the rules of the company in force were the same as those approved by the Public Service Commission thereafter, and provided among other things as follows:

*Stop-Cocks and Their Location.* "There shall be a brass stop-cock in each service attachment, which shall be operated exclusively by, or under the direction of the Indianapolis Water Company; the said stop shall be placed in the pipe, just inside the line of the curbstone, and about one foot distant therefrom, and in front of house supplied.

"Each stop-cock shall be provided with a cast iron box, sufficiently large to afford ready access with a key for turning on or off the water. The top of each box shall be placed on a level with the grade of the sidewalk, and be a regulation box such as has been adopted by the Water Company. This box shall be the property of and set by the consumer."

*Taps and Service Connection.* "When application is made for water the applicant shall report to the Water Company the name of a licensed plumber engaged to do his work. The Company shall thereupon issue to said plumber a permit for the work. In all cases where permits are granted, the Water Company will tap the mains for the applicant at its own expense. The service pipe, stops and other fixtures shall be installed at the applicant's expense, and shall be kept in repair and protected from damage by frost by the applicant. All work done in the streets in laying service pipe shall be at the applicant's expense and risk, and all pipe and fixtures except the tap inserted in

the Company's main shall continue to belong to the owner of the property served thereby."

"No building will be supplied with service pipes from more than one main."

*Consumer.* "The word 'consumer' means the person, firm, corporation or association having an interest, whether legal or equitable, sole or only partial, either as tenant or owner, in any property which is, or is about to be supplied with water service by the Company, and the word 'consumer' means all so interested."

"It is expressly stipulated that the Water Company shall not be liable for any damage done by reason of the breaking of, or defect in, any of the consumer's pipes or appliances."

"When application is made for general water service at a location not previously connected, the applicant shall report to the Company the name of a licensed plumber engaged to do his work. The Company will thereupon issue to said plumber a permit for the work. In all cases where permits are granted, the Company will tap the mains for the applicant at its own expense. The service pipe, stops and other fixtures shall be installed at the applicant's expense."

"Although original service lines are installed by and at the expense of the consumer, that portion lying between the water main and the property line shall, if necessary, be maintained or replaced by and at the expense of the Company."

"The consumer shall maintain all service lines within his property. Whenever there is waste of water between the property line and the meter, the Company reserves the right to shut off the water at the crub and to keep it off until the repairs have been made."

"There shall be an approved stop-cock in each service attachment, which shall be operated exclusively by or under the direction of the Company. The said stop shall be placed in the pipe just inside the line of the curbstone, or inside the

sidewalk where the walk lies next to curb, and in front of the building supplied."

"Each stop-cock shall be provided with a regulation curb box such as has been adopted by the Company. The top of the box shall be placed on a level with the grade of the sidewalk. This box shall be set by the consumer's plumber, remain the property of the consumer and be maintained by him."

"No plumber shall do any plumbing in connection with this Company's system until he shall have agreed to comply with these rules and regulations, and have given to the Company a satisfactory Surety Company Bond in the sum of One Thousand Dollars, and have received from the Company a license."

"No plumber shall give or loan a curb stop-key to any person."

"Plumbers are required to take out a permit whenever they have contracted to do work involving the setting of meter connections. They shall comply with the instructions of the Company's representative as to the location of such connections."

"The tapping of any main of this Company shall be done by its employes only."

"All runs of pipe, whether original or on extension work, and all disconnected services shall not be covered until they have been inspected by the Company's representative."

"The water shall not be turned on at any premises except by the Company's inspector, but may be temporarily turned on by the plumber to test the work, and shall be turned off immediately after the test is made."

According to the usual and regular mode of installation, after the plumber has opened a drainage to the Water Company's main, and has put in the service line with the stop-cock, he opens the valve on the main, letting the water into the stop-cock.

Between 1928 and 1930 the defective, raised condition of the curb box was apparent and known to the owner of the property in front of which it was located, and the owner unsuccessfully attempted to keep dirt around it. Said property owner notified the Water Company about the condition of the curb box, requesting that the same be fixed; the Water Company refused to comply, denying ownership of the curb box, and told such property owner to have it repaired herself, which the latter had done at a time subsequent to the accident.

On February 11, 1935, at 6:30 P. M., at a time when it was dark, after plaintiff had alighted from her automobile parked opposite the curb box, she tripped over said curb box, and was thrown to the sidewalk, sustaining injuries for which this action was brought.

Appellant contends that the finding of the jury, that the Public Service Commission has placed the duty on the consumer of maintaining the cut-off box, is a finding that the question of this duty is already adjudicated, and that adjudication should be recognized by the court.

The Public Service Commission of Indiana is purely an administrative board, created by the state and by legislation given only administrative and ministerial powers; and it is without legislative authority. *In re Northwestern Indiana Tel. Co.* (1930), 201 Ind. 667, 673, 171 N. E. 65.

The authority of the Public Service Commission is sufficiently broad to empower it to establish rules and regulations for the government of the utility in the prosecution of its business, but such Public Service Commission cannot relieve a utility from liability under the law of negligence as it exists in Indiana, by any rule it may adopt. If the utility owes a duty to the public under the law, certainly that

duty cannot be abrogated or set aside by any regulatory order adopted by the Commission.

"Negligence arises on the breach of a legal duty to use care, and where there is no duty there can be no negligence." *Marion, etc., Construction Co.* v. *Claycomb* (1912), 52 Ind. App. 681, 684, 98 N. E. 744.

The question to be determined herein is whether or not appellant owed a legal duty to appellee, and if it did owe a duty whether or not that duty was breached, and in the determination thereof we look to the facts and circumstances involved.

The evidence discloses that the service line and curb box in question were installed while appellant was operating under a franchise from the City of Indianapolis, and that it was installed under rules fixed by appellant.

"It is a nuisance and unlawful to place and keep or leave continuously in a public highway anything which either impedes or endangers public travel. This rule applies to the whole width of the highway, and not merely to a worn portion of it commonly used for passage. Privileges which, if usurped by a great number of persons or corporations would change the road from a public easement to a mere special benefit or convenience to such usurpers, are not lawful for any of them. The uses must be consistent with the continued use of the road and every part thereof as a passageway by all persons exercising ordinary care." *Indiana, etc., Gas Co.* v. *McMath* (1900), 26 Ind. App. 154, 157, 57 N. E. 593.

Primarily, cities are responsible for the safety of the streets and alleys for travel, and one accepting a permit or franchise to use the streets and alleys for a private enterprise takes such permit with that burden and assumes the legal duty to use

care, in the use of such streets and alleys in his business.

While municipal authority has the power to grant special easements in the streets, this power is restricted by the rule which requires that only a reasonable use of the public highway may be granted to a utility, and as a part of the grant there remains the duty of the grantor primarily and of the grantee to maintain or restore the public way for the use of the traveling public.

"It is true that one who is personally bound to perform a duty cannot relieve himself from the burden of such obligation by any contract which he may make for its performance by another person, and that the one on whom the obligation originally rests cannot successfully interpose the defense that he has entered into a contract with another by which the latter undertook to perform the duty, but this principle applies to persons injured by some neglect of duty, and does not obtain as between joint tort-feasors." *Marion, etc., Construction Co.* v. *Claycomb,* supra, p. 685.

Appellant was a quasi-public corporation, and under its franchise furnished water to the citizens of Indianapolis. By its rules in force at the time of the installation of the service line and curb box, it required, as a condition precedent to furnishing water to a consumer, that such consumer install a service line in the street and place a curb box therein and agree to maintain the same. This it had a right to do, but such rule and contract for installation and maintenance, while binding upon the parties thereto, does not bind a member of the traveling public, who was not a party to such transaction.

The record discloses that after the connection of the service line to the water main is completed and valve

and curb box installed, the valve at the main is opened and the water flows to the stop-cock in the service line. The valve controlled by use of the curb box is thus in constant use by the appellant in retaining the water in the service line.

It is further disclosed that in the usual installation of service to property a second stop-cock is constructed for use of the consumer, which can be used by him without permission from appellant, for the purpose of shutting off the water to his premises, and this stop-cock was usually installed in the cellar or on the premises of the consumer. This second stop-cock or shut-off valve was not installed in the service line in question.

By their rules appellant retained exclusive control of the stop-cock in the service line, fixed the location thereof, provided for the installation of a stop box or curb box affording ready access for operating the stop-cock, and provided how such box should be set. Appellant also, before a service line was installed, issued a permit to the plumber and retained the right to maintain or replace the service lines between the mains and the property line, and required the plumber to post a bond of $1,000.00, approved by appellant, and issued a license to said plumber. The rules further provided that all runs of pipe should be inspected by appellant. Under these circumstances, can it be said that appellant did not have control over the service line and curb box? We think it did, and possessing such control we find that it was bound to maintain them in a safe condition, so far as the public was concerned.

The fact that the franchise originally granted by the city was surrendered and an indeterminate permit accepted from the Public Service Commission, and the further facts that the rules and regulations of the

appellant were approved by the Public Service Commission would not, in anywise, lessen the duty of appellant to the public. The indeterminate permit carried with it all of the force the original franchise had, and the rules as adopted were identical with the rules in force at the time of the installation of the service line and curb-box complained of.

Cases similar to the instant case have been decided in courts of other jurisdictions, and appellant cites the cases of *Neal* v. *San Antonio Water Supply Co.* (1919), Tex. Civ. App., 218 S. W. 35; *San Antonio Water Supply Co.* v. *Castle* (1917), Tex. Civ. App. 199 S. W. 300; and *Fisher* v. *St. Joseph Water Co.* (1910), 151 Mo. App. 530, 132 S. W. 288.

In the case first above cited the facts as established by the evidence were that the San Antonio Water Supply Company owned a water main in Flores Street in the city of San Antonio, and that one Dittmar connected a pipe line to said main and extended it to Theo Avenue, an avenue upon which the Water Company had no main, and more than a quarter of a mile therefrom, that Dittmar owned the line and permitted one Gray to tap his private line on Theo Avenue, and that Gray installed the offending curb box; that the Water Company exercised no control whatsoever over the installation of the private line or curb box. The subject-matter of the litigation is identical with the case here, but the facts are entirely different.

In the case of *San Antonio Water Supply Co.* v. *Castle* herein above referred to, the court found the evidence was not sufficient to bind the Water Company. A service line had been installed into the premises of the Driess Drug Store a long time prior to the negligence complained of, and a water box had also been installed and had been removed prior to the accident by the Water Company, but the service line

was still in use by the Drug Store. Some years prior to the accident the Driess Drug Store employed one Krakauer to repair a leak in the line who, without permission from the Water Company, installed a curb box on said service line at the request of the Driess Drug Store. In passing on the question the court stated that Krakauer and his employees were responsible for the condition of the sidewalk and curb box, and there was no evidence that the Water Company created or controlled such condition.

In the case of *Fisher* v. *St. Joseph Water Company*, supra, the court held that the customer may be required to install the service pipe and curb box and having done so they become appurtenances to his realty, and as between *him* and *the Water Company* the burden was his to maintain and repair.

The present case does not present any controversy between appellant and the property owner, and the inquiry is not what duty appellant owed to the property owner for whom the service line had been installed, but what duty, if any, appellant owed to the public, when using the street of the city of Indianapolis for the prosecution of its business.

In the case of *City of Des Moines* v. *Des Moines Water Co.* (1920), 188 Iowa 24, 175 N. W. 821, 823, under conditions and circumstances similar to the case here, the court said: ''There is nothing in the evidence tending to show that during the 24 years and more which have elapsed since this stop box was put in the lot owner has ever assumed its use or control in any form or to any extent. But were it otherwise, and were it to be conceded that the stop box and the pipe extending therefrom to the surface of the sidewalk was kept and maintained for the common use and convenience of the company and lot owner, it would clearly

still be the duty of the company, as well as of the lot owner, to use reasonable care to see that such apparatus planted in the public walk for its use (whether exclusive or in common) is so constructed and maintained as not to create a nuisance or source of peril to persons lawfully using the public way.''

Appellant by its original franchise and by the indeterminate permit was granted authority to use the streets of Indianapolis for the construction and operation of its business for profit. This grant carries with it, as a matter of law, the implied burden that its use of the streets, by its instrumentalities or otherwise, shall be exercised with reasonable care for the safety of those lawfully exercising their right to use the street for the purpose of travel.

The authority of appellant to require consumers or property owners to agree to construct and maintain their service lines and curb boxes, before they can enjoy the conveniences of the utility; and the fact that they exercised that authority, and established rules, afterwards approved by the Public Service Commission, which rules reserved to them the exclusive control and operation of the stop-cock; and the minute supervision they exercised, under the rules, over the installation of such service line and curb box; and a consideration of all the evidence in the case leads us to the conclusion that the verdict of the jury is sustained by sufficient evidence and is not contrary to law.

In its motion for a new trial appellant also predicates error on the giving by the court of its own motion instructions 1 to 11 inclusive, but only discusses error as to instructions 4, 5 and 6 in its brief.

Instruction No. 4 informed the jury that if the curb box was constructed and maintained at the time and

place set out in the complaint, for the benefit of both appellant and owner of adjoining property, it was the duty of appellant to use reasonable care to see that the curb-box was constructed and maintained so as not to be dangerous to persons lawfully using the street. This instruction if considered alone is too broad in scope, but considering the same along with other instructions given we do not think the jury was misled thereby.

Intruction No. 5 informed the jury that if they found from the evidence that the curb-box was an instrumentality used in its business by appellant, and was under the control of appellant, it was the duty of appellant to exercise reasonable care to maintain it. This is a correct instruction and states the law.

Instruction No. 6 informs the jury that the rules and regulations of appellant, placing the burden of construction and maintenance of the curb-box on the property owner, would not relieve appellant of the duty to exercise care as not to obstruct the lawful use of the street. This we deem is a proper instruction.

The motion for a new trial further predicates error on the refusal of the court to give each of the instructions requested by appellant numbered 1, 2, 4, 5 and 7, but appellant in its brief discusses alleged errors as to instructions 1, 2, and 7 only.

Instruction No. 1 is a peremptory instruction to find for appellant and the question of error in the refusal to give same is disposed of heretofore in this opinion in the discussion of the first and second causes in motion for new trial, and need not be discussed further.

Instructions Nos. 2 and 7 each deal with the installation and ownership, and entirely overlook the

element of control of the installation and control of the instrumentality, and were properly refused.

Error is also predicated on the giving of instruction No. 6 tendered by appellee, but is not discussed, and error is waived as to it as well as other errors not discussed in appellant's brief.

Finding no reversible error in the proceedings of the trial court, judgment is affirmed.

Curtis, C. J., dissents.