## Hindes *v.* Pittsburgh, Appellant.

Argued April 28, 1944. Before KELLER, P. J., BALDRIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J., absent).

*Anne X. Alpern, City Solicitor,* with her *Harry Savage,* Assistant City Solicitor, for appellant.

*J. Thomas Hoffman,* with him *M. J. Hindes,* for appellee.

OPINION BY RENO, J., July 15, 1944:

This action of trespass was brought to recover damages caused to plaintiff's building by defendant's negligent failure, after notice, to repair its leaking water main lying under the cartway of Carson Street. Defendant has appealed from a verdict and judgment for plaintiff, assigning as error the refusal of its motions for judgment n.o.v. and a new trial.

Plaintiff was the owner of 2838 Carson Street, a three-story brick building used for two apartments and a restaurant. Although the property was forty to fifty years old, it was described by plaintiff's witness as having been in sound condition in the Fall of 1937.

Plaintiff's son, M. J. Hindes, who managed the property, testified that in November, 1937, the cellar became flooded with water. After having the basement pumped dry, he examined the water meter and the pipes and found no leak, but noticed that water was trickling through the west foundation wall. The two lots immediately to the west of plaintiff's premises, 2836 and 2834 Carson Street, had been vacant since 1931, when the buildings thereon had been razed under a condemnation order, and Hindes employed a workman to dig up the ground opposite the curb boxes on those lots in an unsuccessful attempt to find service lines which had not been disconnected and which were thought to have been a possible source of the leakage. After inquiry of the tenant occupying the next adjoining building to the

west disclosed that there was no water in the basement of that property, Hindes testified that on November 10, 1937, he reported the condition of the cellar of 2838 Carson Street to the supervising inspector of water lines for the city with a request that the city dig up the sidewalk and street in front of 2834 and 2836 to ascertain whether the water main at that point was leaking. The inspector refused the request, Hindes asserted, on the ground that the city had required the contractor who had demolished the buildings on those lots to remove the service lines and plug the main, and a request by Hindes for permission to undertake the excavation himself was similarly declined. Hindes stated that there had been no water in the basement of the building before November, 1937, but that thereafter a body of water collected to the depth of four feet and remained there until September of 1938 despite another attempt to pump it out. While a third effort to pump the basement dry was being made in September, 1938, a city water inspector chanced to pass the premises and interested himself in the operation. The inspector secured an instrument with which he detected a leak near the curb box on the vacant lot numbered 2834, and when the street was torn up between the curb box and the main it was found that a length of service line underlying the cartway, which had not been removed, had rusted so badly as to permit the escape of a regular flow of water into the subsoil. Upon the removal of the service pipe and the plugging of the main, Hindes testified, it was possible for the first time to pump the water from plaintiff's basement completely, and no further difficulties were encountered. Hindes then examined the building and observed that the east wall of the foundation had subsided about two inches and that the east and rear walls of the house had developed a marked outward bulge. He further testified that a contractor engaged by him to repair the premises immediately after

the water had been removed from the basement had been unable to secure a building permit, as the structure was so deteriorated as to be beyond repair. Condemnation notices were received in March, 1940 and April, 1942, and the building was demolished in July, 1942. Hindes admitted on cross-examination he had testified in the condemnation proceedings that part of the damage to the building resulted from an explosion, and that he had not mentioned the water damage. He further admitted that he had valued the building at $2,250 for assessment purposes in an affidavit taken in 1933, and that he had not objected to an assessment of $1,500 in 1940.

Other witnesses for plaintiff stated that they had observed water in the cellar during the year 1938 and verified Hindes' description of the condition of the property after the date upon which the water had been removed. An architect called by plaintiff testified in response to a hypothetical question that, considering the type of soil in the vicinity, a subsidence of the foundation and a noticeable bulging of the walls would occur if water remained for ten months in the dirt-floor cellar of a house constructed as was 2838 Carson Street.

Defendant's building inspector in charge of condemnations testified that he had examined plaintiff's property in March, 1940, and had found it to be in an extremely run-down condition resulting, in his opinion, from improper maintenance over a period of years. The balance of defendant's relevant testimony was from one of its water service inspectors who stated that he had been called to inspect plaintiff's property several times in the preceding fifteen years and had found water in the cellar attributable to surface drainage intensified by the removal of the buildings from the adjoining lots.

In determining whether a judgment n.o.v. should be entered for the defendant, the plaintiff is entitled to have all the oral evidence favorable to her considered

and all the remainder rejected in its entirety: *Ashworth v. Hannum*, 347 Pa. 393, 32 A. 2d 407. If the facts of the case, when viewed in that light, are sufficient in law to sustain a verdict for plaintiff, judgment n.o.v. will not be entered for defendant, regardless of the appellate court's conclusions concerning the credibility of witnesses.

With this principle in mind, the narrow question remaining on this branch of the appeal is whether a property owner may recover for the injury caused to his premises by water which escapes from a service line in the exclusive control of a municipality and situated under the cartway of a public street where the municipality fails, for ten months after it has been apprised of the possibility of a defect, to inspect and repair the pipes at the place complained of. The law is now too well settled to admit of doubt, and it is clear that under such circumstances the municipality may not avoid responding in damages. "The burden rested upon the plaintiff of showing that her damages resulted from the negligence of the defendant and this she could have done by showing the injury to her property by the water escaping from the defendant's line, followed by evidence of unreasonable neglect in repairing the line after actual notice, or for so long a time that the jury could infer negligence on the part of the borough officials in not discovering the defect in the line even without notice": *Morgan v. Duquesne Borough*, 29 Pa. Superior Ct. 100, 105. "The moment the water was stopped off from entering the extended pipe, the leak ceased, after all other efforts to discover it were exhausted without any success. It is impossible to doubt the leak came from this pipe, and as it was a pipe over which the plaintiff had not the slightest control and the defendant had exclusive authority, the responsibility for its defects was cast upon the city": *Rumsey r. Philadelphia*, 171 Pa. 63, 66, 32 A. 1133. See also,

*Riegel & Co., Inc., v. Philadelphia,* 296 Pa. 256, 145 A. 837; *Herron v. Duquesne Borough,* 34 Pa. Superior Ct. 231; *Zimmer v. Philadelphia,* 57 Pa. Superior Ct. 20; *Boyle v. Pittsburgh,* 145 Pa. Superior Ct. 325, 21 A. 2d 243. Appellant's motion for judgment n.o.v. was properly refused.

Appellant contends that a new trial should have been granted on its evidence tending to prove that plaintiff's building had become deteriorated as the result of improper maintenance over a period of many years prior to the water damage relied upon as the basis for this action. The weight of the evidence, however, is primarily for the jury subject to the trial court's discretionary power to award a new trial in the interests of justice. The jury returned a verdict for $4,326; the court below refused appellant's motion for a new trial upon condition that plaintiff remit the excess above $2,500; and the plaintiff filed a remittitur accordingly. Thus, we can find no abuse of discretion by the court below.

Appellant's principal argument is that plaintiff's case is grounded upon a supposed municipal responsibility arising out of the failure to issue a permit to dig up the street; that the issuance of permits is a governmental function; and that a municipality cannot be subjected to liability for the negligent performance of a governmental function. The major difficulty with appellant's position is that plaintiff's statement of claim plainly sets out that the negligence relied upon is the failure of the city to inspect and repair the pipes after notice, and that nowhere in the pleadings is the refusal of a permit made the basis of an allegation of negligence. It is true that plaintiff's witness, Hindes, while testifying to the notice given by him to the water bureau, stated that he had requested and was refused a permit to excavate the cartway, but the gravamen of the complaint is the city's failure to act after it knew or

should have known that its water lines were causing property damage. The cases relied upon by appellant (*Clinard v. City of Winston Salem,* 173 N. C. 356, 91 S. E. 1039 and *Lindemann v. City of Kenosha,* 206 Wis. 364, 240 N. W. 373), involve actions for the refusal or revocation of building permits, but they do not touch the issue raised in this case. Whether the issuance of street excavation permits by the water bureau of a municipality owning and operating its own water system is a governmental function is therefore not before us, and is not decided.

Judgment affirmed.