Helz *v.* Pittsburgh, Appellant.

Argued September 26, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James J. Burns, Jr.,* for individual defendant, appellant.

*Thomas E. Barton,* Assistant City Solicitor, with him *J. Frank McKenna, Jr.,* for City of Pittsburgh, appellant.

*John E. Evans, Jr.,* with him *Thomas P. Mulvaney, James J. Burns, Jr.,* and *Evans, Ivory & Evans,* for appellee.

OPINION BY MR. JUSTICE JONES, November 27, 1956:

These respective appeals by the defendants, viz., an individual property owner and the City of Pittsburgh, are from the order of the court below refusing their separate motions for judgment n.o.v. and awarding the plaintiff a new trial on her motion. The action is in trespass for damages for injuries received by the plaintiff as the result of a fall caused by the teetering of the metal cover of a cylindrical sunken housing of a water meter. The cover was at ground level and located between the paved portions of the sidewalk and the curb in front of the property of the individual defendant. The meter was on the service line running from the City's water main in the street to the house of the individual defendant.

The trial court instructed the jury that, if it found the cover of the meter housing was negligently maintained, the City would only be secondarily liable for the plaintiff's injuries and that primary liability would rest upon the property owner. In patent disregard of the court's instructions, the jury returned a verdict in favor of the plaintiff for $13,000 against the City *alone*. When the court attempted to mold the verdict so as to make it conform to its instructions with respect to the relative primary and secondary liabilities of the defendants, the jury objected. The $13,000 verdict was not accepted by the court nor recorded; and, after further instructions by the court, the jury was again allowed to retire to deliberate further. It later returned with a verdict for the plaintiff in the sum of $7,000 against both defendants jointly with liability over against the defendant property owner for the full amount of the verdict.

The $7,000 verdict was a virtual nullity. It plainly did not reflect a "true" verdict which is what the jury

was sworn to render. Obviously, the quantum of damages, to which the plaintiff was entitled in the event the jury found liability on the part of either or both of the defendants, could not possibly be made to depend upon whom the liability was fastened. Yet, the jury changed the amount of its verdict from $13,000 to $7,000 after it had been told by the court that, if it found the City liable, it would also have to find the property owner liable and place the liability over upon him for the full amount of the verdict. A verdict so obviously defective in amount could not be permitted to stand; and a new trial was accordingly indicated.

However, the defendants' respective motions for judgment n.o.v. necessarily had to be disposed of before a new trial could properly be awarded. The abortive result of the trial bears a striking analogy to where a jury, unable to agree upon a verdict, is discharged. In such instance, the motion of a party for judgment is upon the whole record and not judgment n.o.v.; and the entry by the trial court of an order for a new trial automatically disposes of the motion for judgment, and neither the court's action refusing judgment nor the granting of a new trial is appealable: see *DeWaele v. Metropolitan Life Insurance Company*, 358 Pa. 574, 58 A. 2d 34. Even though the defendants' motions in the instant case were not nominally for judgments on the whole record (a verdict, albeit a specious one, having been recorded below), the record of the trial is such as not to warrant the entry of summary judgments for the defendants or interference with the lower court's granting of a new trial.

The learned court below based its award of a new trial on the ground that it had erred in not instructing the jury that the City could also be independently liable for the proper maintenance of the meter and its

housing as a necessary part of the water system which the City owned and operated. Since the case goes back for a retrial, it is appropriate that we discuss this phase of the controversy.

It is well settled that, where a municipal corporation engages in the business of distributing water to its citizens, it does so in its proprietary capacity and, consequently, is liable for any injuries tortiously inflicted in carrying on the operation: see, e.g., *Kane v. Philadelphia,* 196 Pa. 502, 504, 46 A. 893; *City of Philadelphia v. Gilmartin,* 71 Pa. 140, 158; *Hindes v. Pittsburgh,* 155 Pa. Superior Ct. 314, 318, 38 A. 2d 420; and *Potter v. City of Coffeyville,* 142 Kan. 183, 45 P. 2d 844. It is the City's contention, however, that by virtue of an ordinance, in the nature of a contract with a subscribing customer, under which the City supplied water to the defendant property owner, the City did not own or control the meters or their housing and settings and that, therefore, the primary duty of maintenance, and hence liability therefor, was on the property owner.

The question which here arises is whether a municipality, which furnishes water to its citizens, may be liable for the improper maintenance of a water meter housing when the municipality has by ordinance imposed upon the property-owning water customer the obligation of purchasing the meter and of paying for its installation and maintenance. Apparently, the question has never been passed upon in this State. And, there exists a conflict of authority elsewhere. For instance, in *Fisher v. St. Joseph Water Co.,* 151 Mo. App. 530, 132 S.W. 288, and *Jackson v. City of Ellendale,* 4 N.D. 478, 61 N.W. 1030, it was held that the private servicing equipment, thus installed, belonged to the property owner, became appurtenant to his realty and that the municipal authority was not liable for injury

therefrom, while in *Indianapolis Water Co. v. Schoene-mann,* 107 Ind. App. 308, 20 N.E. 2d 671; *Nord v. Butte Water Co.,* 96 Mont. 311, 30 P. 2d 809; and *Harms v. City of Beatrice,* 142 Neb. 219, 5 N.W. 2d 287, it was held that benefit and control of the service are more material than ownership of individual servicing equipment and that municipal authorities supplying water service are at least secondarily liable. See also Annotation 142 A.L.R. 243. The better view would seem to be that, while the ordinance or contract between the municipality furnishing water and its customer may dispose of incidental liability *inter se,* it cannot affect the question as to the liability between the municipality and a member of the traveling public: see *Indianapolis Water Co. v. Schoenemann,* supra.

As to the nature of the City's liability in the premises, its argument is that, by reason of the ordinance, the primary duty of maintaining the setting of the meter housing was upon the property owner and that the City's only duty was to see that the property owner discharged properly his obligation in such regard. Consequently, the City contends that, as between it and its water customer, it is only secondarily liable and therefore entitled to indemnity from the property owner because of his primary liability. But, the ordinance does not dispose of the question of the responsibility for the maintenance of the meter housing's setting. Section 5 of the ordinance reserves to the City the right to complete control of the meter while Section 3 requires the approval of the Director of Public Works of the settings of meters. The evidence in the case also disclosed that the City required its employees who were engaged in reading water meters to inspect the covers, crocks and frames of water meters and to report all defects to the City so that its plumbers could repair

them. The City required the setting, furnished the component parts at the expense of the property-owning customer and maintained the assembly as an integral part of its water system. We conclude, therefore, that both parties owed an independent duty to the plaintiff to maintain the meter setting in a reasonably safe condition and that the ordinance does not establish such a legal relation between the municipality and its water customer as to reduce the City's primary obligation to one of secondary liability so far as the traveling public is concerned.

In view of the evidence in the case as to the length of the City's knowledge of the unsafe condition of the housing cover and the fact that the City's duty in respect thereof could be primary and not secondary, we are unable to see how the City can claim indemnity under established principles of restitution: see Restatement, Restitution, §95. In *Builders Supply Company v. McCabe*, 366 Pa. 322, 328, 77 A. 2d 368, it was said that ". . . the important point to be noted in all the cases [where indemnity is awarded] is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs . . . no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one . . . ."

The appellant property-owner's contentions that the evidence in the case was insufficient to convict him of operative negligence in the injury to the plaintiff and that the plaintiff was guilty of contributory negligence were both questions for the jury in the light of the evidence.

Of course, proofs at the retrial differing in material part from those in the record now before us might alter the applicability of the legal principles above considered.

Order affirmed.