**Stewart v. Uniroyal, Inc. (No. 2)**

*Thomas Hollander*, for plaintiff.
*Giles Gaca*, for defendant Gulf Oil Corp.
*Anthony Picadio*, for defendant Hoffman.
*Thomas M. Weis*, for defendant Proctor.
*Robert G. Simasek*, for defendant Seilon, Inc.

LOUIK, *J.*, February 13, 1975—Upon dismissal of defendants' motion for judgment n.o.v. and new trial by the court en banc (Louik and Wekselman, *JJ.*, October 23, 1974, Stewart v. Uniroyal, Inc., (No. 1), 72 D. & C. 2d 179 (1974)), this court is faced with the problem of determining the proportionate liability of these unsuccessful defendants: Gulf Oil Corporation (service station owner and negligent supplier of the unsafe tire-changing machine), Duane S. Proctor (service station operator and negligent possessor of the unsafe tire-changing machine), Seilon, Inc. (manufacturer of the defective tire) and Calvin Hoffman (seller of the used defective tire). It was stipulated at trial by all counsel that the questions of contribution, indemnification and counsel fees would be decided by this court on the record in this case.

## INDEMNIFICATION

Various claims for indemnification have been presented to this court by the pleadings, motions,

briefs and oral arguments. Gulf Oil Corporation has ceased to pursue its claim for indemnity, based upon an express provision in its franchise agreement, in light of the jury's finding Gulf negligent independent of any arguable master-servant relationship between it and the service station operator. Opinion of the court en banc, 72 D. & C. 2d, at 184.

At trial, it was ruled that, as a matter of law, Hoffman would be entitled to indemnity upon a finding by the jury that the tire Hoffman sold was in a defective condition unreasonably dangerous at the time it left Seilon's control. The jury so found and the court en banc affirmed this verdict, stating that implicit in such a finding is the conclusion that the portion of the tire relevant to plaintiff's injuries remained unimpaired between the time of manufacture and sale by Seilon to the time of the accident. Opinion of the court en banc, 72 D. & C. 2d, at 198.

The law of indemnification has been clarified in its application to the field of products liability in Burbage v. Boiler Engineering & Supply Co., Inc., 433 Pa. 319, 324-27, 249 A. 2d 563 (1969). In Burbage, the manufacturer of a component part was held liable for indemnification in favor of the manufacturer of the assembled product. A boiler manufactured by the original defendant exploded as a result of the sticking of a valve manufactured by the additional defendant. The jury's verdict against the original defendant, with a further finding of indemnification against the additional defendant, indicated to the Supreme Court that there had been no substantial change in the valve once it had left the hands of the component parts manufacturer.

At 433 Pa. 326-27, the court restated the applicable law:

"The right of indemnity rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by law to an injured party. The right to indemnity enures to a person who, without active fault on his own part, has been compelled by reason of some legal obligation to pay damages occasioned by the negligence of another. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence but rather on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. Secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal obligation between the parties or arising from some positive rule of statutory or common law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible: Builders Supply Co. v. McCabe, 366 Pa. 322, 328, 77 A. 2d 368 (1951). Cf. Martinique Shoes v. New York Progressive Wood Heel Co., 207 Pa. Superior Ct. 404, 217 A. 2d 781 (1966)." (court's emphasis).

The Burbage court reasoned that, under the evidence, plaintiff could have just as easily received a judgment against the component parts manufacturer.

"It would be transparent reasoning of the highest order to conclude that recovery could not be had by Boiler [original defendant] from General [addi-

tional defendant] in the nature of indemnity. Nothing Boiler did exonerated General from being primarily liable for the accident. First, Boiler had no duty to inspect which would have precluded it from recovery under the assumption of risk provision in §402A. Second, the jury determined upon the basis of sufficient evidence that there was no substantial change in the valve subsequent to its leaving General's hands.": Burbage, supra, at page 327.

Likewise, the ultimate seller of the defective tire herein did nothing to exonerate the manufacturer of the defective tire who placed it into the stream of commerce. Hoffman was merely a conduit through whose hands passed a dangerous instrumentality: Salvador v. Atlantic Steel Boiler Co., 457 Pa. 24, 32, 319 A. 2d 903 (1974); Kassab v. Central Soya, 432 Pa. 217, 227-28, 246 A. 2d 848 (1968). Hoffman did not actively concur in the wrong which gave rise to plaintiff's injuries: Frumer and Friedman, Products Liability, §44.02[1], 15-8 (1974). At best, the junk dealer failed "to discover or remedy a dangerous condition caused by the act of the one primarily responsible.": Burbage, supra, at page 327; Mixter v. Mack Trucks, Inc., 224 Pa. Superior Ct. 313, 319, 308 A. 2d 139 (1973). The tire manufacturer is liable for the full share of damages attributable to the defective tire. Also, as a necessarily concomitant aspect of Hoffman's defense of the case in which his fault was "imputed or constructive only," those legal expenses engendered by him in the defense of the underlying action, and not those incurred in the indemnification litigation, may be recovered from Seilon: Boiler Engineering & Supply Co., Inc., v. General Controls, Inc., 443 Pa. 44, 47, 277 A. 2d 812 (1971).

Hoffman proposes another argument for indemnification that is similar to the ones made by Seilon and Proctor by which each claim that defendants associated with the other instrumentality are liable over to claimants for all expenses incurred as a result of the litigation. That is, Proctor seeks indemnity from the tire manufacturer and seller; and Seilon and Hoffman seek indemnity from the service station owner and operator. Each claimant argues that the negligence of the other parties or the defective condition of the product was found by the jury to be the proximate cause of plaintiff's harm. Thus, they maintain that such negligence or defective condition was the active cause of the injuries and the parties responsible therefor should indemnify them for their share of the judgment plus counsel fees.

In Mixter, supra, the Superior Court permitted the seller (Mack Trucks, Inc.) of a tractor with a defective tire and rim assembly to be indemnified by the negligent party (Montgomery Ward & Co., Inc.) which created the defect. Plaintiff was seriously injured by the explosion of the tire and rim assembly which he had removed from the used tractor he had purchased about three months before. Contending that the rim was defective, plaintiff sued the seller who joined as an additional defendant the company which had installed new tubes and tires on the old rim assembly. The case was submitted to the jury against the seller for strict liability and against the installer for negligence. The jury returned a verdict against both, finding them joint tortfeasors; and the trial court, per Silvestri, *J.*, awarded indemnification in favor of the original defendant for its share of the verdict.

Though it may seem incongruous for the Mixter

court to grant indemnity where defendants were joint tortfeasors and apparently in common fault, the court was able to distinguish the "character or kind of the wrongs which cause the injury" to determine that the duties of defendants were widely disparate: Mixter, supra, at pages 316, 320; see Globe Indemnity Co. v. Agway, Inc., 456 F. 2d 472, 475 (3d Cir., 1972). The imposition of the total liability upon the installer as the party with the greater duty is grounded upon the court's judgment under the particular circumstances of the case and not simply a determination of active or passive fault:

"As times change and relations become more and more complicated, it becomes increasingly difficult to find magic words to encompass every situation. As has been said by one writer [Prosser]: '[T]he duty to indemnity will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than the other.'

"*It becomes apparent that each case must rest on its own facts . . . .*

"Whether or not the rim was defective when the tractor was delivered to Montgomery Ward, Mack's liability arose from a rule of law. Any actual fault attributable to Mack lay in its failure to discover the defect. Montgomery Ward's liability arose because it negligently mounted a new tire on a defective rim, thus creating a dangerous condition. It would seem that the defect in the rim was concealed from Mack by a tire, both before and after the new tire was installed. When Montgomery Ward installed the new tire, it was necessary to remove the old tire from the rim. Its negligence at that time lay in mounting the tire on a rim of whose defective nature it was or should have been aware. In so doing it

effectively sealed off any opportunity Mack might have had to inspect. Mack's fault, if any existed, lay in failing to discover or prevent the misconduct of Montgomery Ward. The greater duty of Montgomery Ward justly requires it to bear the whole burden as between it and Mack.": Mixter, supra, at pages 317-19. (emphasis supplied).

In Mixter, as well as in Tromza v. Tecumseh Products Co., 378 F. 2d 601 (3d Cir., 1967), which was relied on by the Mixter court, in Greco v. Bucciconi Engineering Co., 407 F. 2d 87 (3d Cir., 1969) and in Burbage, supra, the courts granted indemnification in cases in which the defective condition and/or negligent activities related to one instrumentality. The cases are inapposite to the case at bar, wherein the jury found that the tire was manufactured in a defective condition unreasonably dangerous and Gulf and Proctor were found negligent with respect to the tire-changing machine, all of which occurred as the proximate cause of plaintiff's injuries. Opinion of the court en banc, 72 D. & C. 2d, at 183-84. No right of indemnity may be found between parties which have violated similar duties to the injured party: Helz v. Pittsburgh, 387 Pa. 169, 175, 127 A. 2d 89 (1956). Considering the above quoted law and all the evidence, it is clear that defendants herein breached independent duties of a similar kind and character, and consequently must bear the expense of the jury's verdict.

## CONTRIBUTION

Having concluded that Hoffman's responsibility has shifted to Seilon and that Seilon, Proctor and Hoffman may not shift their liability to defendants associated with the other instrumentality, the contribution issue remains: What is the proper "dis-

tribution among responsible tortfeasors of the loss caused to an injured party?": Frumer and Friedman, supra, at §44.02 [2], 15-10. Since contribution and indemnity are alternative remedies, in any case in which the right to indemnity lies, Pennsylvania's contribution statute will not apply: Globe Indemnity Co., supra, at page 475; Prosser, Law of Torts, §50 (4th ed. 1971). Therefore, this court cannot require contribution between Hoffman and other defendants.

If this court were to permit contribution among all four defendants, then the amount for which the Restatement (2d), Torts §402A defendant would be responsible could depend wholly upon the number of members of the distribution chain of manufacture and sale of the tires that were brought into the strict liability action as original or additional defendants. With the greater number of sellers through whose hands the defective tire passed would come an increased opportunity for a defendant charged with negligence to lessen its burden in the event plaintiff ultimately prevailed. This would produce unjust and inequitable consequences depending solely upon irrelevant circumstances. Rather, this court views the Seilon-Hoffman distributive chain as one entity with liability for one contributing share of the verdict.

As between a §402A tortfeasor (Seilon) and negligent tortfeasors (Gulf and Proctor), contribution has been permitted where defendants are in pari delicto: Chamberlain v. Carborundum Co., 485 F. 2d 31, 33-34 (3d Cir., 1973):

"That in Carborundum's case [original defendant manufacturer] the law imposes an absolute duty of care to manufacture a nondefective product, while in Berwind's case [third party defendant employer of plaintiff] the law imposes only the standard of

reasonable care seems to us quite irrelevant. Relevant is the conjunction of defective performance of both duties, which produced the accident.

"'The theory is that as between the two tortfeasors the contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done.': Puller v. Puller, 380 Pa. 219, 221, 110 A. 2d 175, 177 (1955)."

The jury found that the defective tire and the two negligent defendants concurrently caused plaintiff's harm. Viewing their respective duties upon the same plane, their common liability must be affirmed: Globe Indemnity Co., supra, at page 475; Builders Supply Co., supra, at page 328.

Accordingly, contribution among them may be made in the following proportions: one-third by Gulf Oil Corporation, one-third by Duane S. Proctor and one-third by the Calvin Hoffman-Seilon Inc. entity. And, Calvin Hoffman is entitled to indemnity against Seilon, Inc., for any payment that he is required to make under the verdict entered in this case.