John **TROMZA**

v.

**TECUMSEH PRODUCTS COMPANY, a Corporation and Marquette Corporation, a Corporation.**

**Marquette Corporation, Appellant.**

**No. 15958.**

United States Court of Appeals Third Circuit.

Argued Nov. 17, 1966.

Decided June 5, 1967.

---

9. Being the agreement by which Hooker purchased a one-half interest in the formulas from Pickren.

William A. Weiler, Pittsburgh, Pa. (Egler, McGregor & Reinstadtler, Pittsburgh, Pa., on the brief), for appellant.

Kim Darragh, Pittsburgh, Pa. (Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., on the brief), for appellee, Tecumseh Products Co.

Donald Laird Hankey, New Kensington, Pa., for plaintiff-appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

In the instant personal injury action [1] the jury awarded damages to the plaintiff John Tromza against the defendants Tecumseh Products Company ("Tecumseh") and Marquette Corporation ("Marquette"), and the District Court found against Marquette in its cross-claim for indemnity against Tecumseh.[2]

The District Court entered judgment in favor of the plaintiff against Tecumseh and Marquette pursuant to the jury's verdict, following its denial of their respective motions for judgment n. o. v., and Marquette's additional motion for a new trial. It also entered judgment in favor of Tecumseh against Marquette after denying Marquette's motion for judgment n. o. v. as to the cross-claim.

This appeal by Marquette followed.[3]

It urges that it is entitled to judgment n. o. v. both in its cross-claim against Tecumseh and in Tromza's case; further, that asserted erroneous instructions to the jury by the District Court entitle it to the minimum relief of a new trial.

In reply, Tromza contends that the evidence sustains the jury's verdict in its favor against Marquette and Tecumseh and that the District Court did not err in its instructions to the jury. Tecumseh, in its reply, asserts that the District Court correctly entered judgment in its favor in the cross-claim for indemnity.

Discussion of the issues presented must be prefaced by this statement of the critical facts adduced at the trial.

Tecumseh manufactured and sold to Marquette a sealed compressor refrigeration unit which Marquette incorporated in a refrigerator which it manufactured. The compressor unit was enclosed in a steel casing or shell, whose two halves were welded by Tecumseh. The refrigerator manufactured by Marquette carried a plate which stated that the factory test pressure of the refrigeration unit was 195 pounds.

The casing or shell of the compressor unit exploded when the plaintiff, a repair man, submitted the refrigerator to a pressure of 170 pounds in proceeding to repair a gas leak in its refrigeration system. The plaintiff was seriously injured by the explosion.

Plaintiff's expert witness, Dr. Guy M. Pound, testified that the cause of the explosion was a defect in the weld of the casing. Tecumseh's expert witness, James R. Elliott, testified that it was the usual practice in the industry for an assembler (such as Marquette), to submit the refrigeration system to an air pressure test of 235 to 250 pounds after connecting the compressor unit to the system. Elliott also testified that Underwriters Laboratory Specifications required that the compressor casing or shell should be able to "withstand or have a bursting strength * * * of 350 pounds."

The case was submitted to the jury on the plaintiff's theory that Tecumseh was negligent both in its manu-

1. Jurisdiction was founded on diversity of citizenship. Tromza is a citizen of Pennsylvania; Tecumseh is a Michigan corporation with its principal place of business in Michigan; Marquette is a Delaware corporation with its principal place of business in Minneapolis, Minnesota.

2. The issue as to the cross-claim was not presented to the jury but reserved to the District Court's determination by agreement of the defendants.

3. Tecumseh has not appealed.

facture of the compressor unit and in failing to discover the defect by a proper inspection, and that Marquette was negligent in failing to make a proper test or inspection of the unit. We agree with the District Court that the evidence clearly supported the jury's finding that both Tecumseh and Marquette were negligent. As to Marquette, it need only be pointed out that there was undisputed evidence that the customary industry practice was to submit an assembled refrigerator to a pressure test of 235 to 250 pounds while Marquette made only a 195 pound pressure test.

 We are further of the opinion that there is no merit to Marquette's complaint that the District Court, in its charge, erroneously instructed the jury on the score of negligence on the part of Marquette. Moreover, the record discloses that Marquette did not at the close of the charge, take exceptions to it. Rule 51 F.R.Civ.P. provides that "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict * * *." The Rule has been universally applied except in cases of fundamental error. Freifield v. Hennessy, 353 F.2d 97, 99 (3 Cir. 1965). It may be noted parenthetically that while the District Court denied, and properly so, four requests for instructions presented by Marquette, it has not questioned their denial on this appeal.

Coming now to Marquette's contention that the District Court erred in entering judgment in favor of Tecumseh on Marquette's cross-claim:

 The sum of Marquette's contentions on this score is (1) it was only "secondarily liable" and Tecumseh was "primarily liable", and therefore it is entitled to recover indemnity from Tecumseh; and (2) it is entitled to recov-

ery for breach of an implied warranty by Tecumseh.[4]

In reply, Tecumseh contends that the principle of primary-secondary liability in tort does not apply generally to an indemnity claim between manufacturers.

It must here be noted that the District Court, in its opinion reported at 253 F.Supp. 26, 27 (E.D.Pa.1966), premised its ruling in favor of Tecumseh on the cross-claim on its following stated reasoning:

"Since the identical negligence (failure to make proper inspection) was charged against each defendant, in the light of the jury's verdict the defendants must be found to be joint or concurrent tort-feasors rather than as occupying a relationship of primary and secondary liability. There was no legal relationship between them, such as master and servant, which is ordinarily the basis for distinction of primary and secondary liability. Pittsburgh Steel Company v. Patterson-Emerson-Comstock, Inc., 404 Pa. 53, 61–62, 171 A.2d 185 (1961); Builders Supply Co. v. McCabe, 366 Pa. 322, 325–328, 77 A.2d 368, 24 A.L.R.2d 319 (1951)."

The District Court's determination, in its opinion, that Marquette and Tecumseh were charged with "identical negligence (failure to make proper inspection)" thereby making them "joint or concurrent tort-feasors rather than as occupying a relationship of primary and secondary liability", is at variance with its own prior statement that "the only negligence alleged against defendant Marquette was failure to make a proper test or inspection at the time of assembly; whereas defendant Tecumseh was charged with a two-pronged negligence, both in the welding process and in failure to find the defect by a proper inspection", and its further statement that "The Court remains of opinion that the

---

4. With respect to the latter contention it must be noted that Marquette did not assert in its cross-claim against Tecumseh a right of recovery for breach of implied warranty nor did it assert such a right in the pre-trial proceedings or at the trial or in its motion for directed verdict. Under these circumstances Marquette is precluded from asserting on this appeal its right to recover against Tecumseh for a breach of implied warranty.

evidence and the jury's verdict, on the two-fold grounds above stated, clearly support plaintiff's verdict against defendant Tecumseh." 253 F.Supp. 26, 27.

■ Since the District Court premised its determination that Marquette and Tecumseh "must be found to be joint or concurrent tort-feasors rather than as occupying a relationship of primary and secondary liability" on its view that they were both charged with "identical negligence (failure to make proper inspection)", the circumstance that the negligence charged against the defendants was not "identical", renders the categorization of the defendants as "joint or concurrent tort-feasors" clear error.

■ Further, the District Court erred in its view that under Pennsylvania law, applicable here, a "legal relationship * * * such as master and servant⁵ * * * is ordinarily the basis for distinction of primary and secondary liability." *Pittsburgh Steel Company* and *Builders Supply Co.* which it cites, afford no nourishment to its view, since they specifically do not limit application of the primary-secondary liability doctrine to cases where a legal relationship exists between the party primarily liable and the party secondarily liable.

That that is so is clearly evident from the following quotation from the Pennsylvania Supreme Court's opinion in Builders Supply Co. at 366 Pa. 327–328, 77 A.2d 371:

> "Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as dis-

tinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, *or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous conditioᴛ caused by the act of the one primarily responsible."* (emphasis supplied)

The foregoing quotation was preceded by this statement at 366 Pa. 325–326, 77 A.2d 370:

> "The right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence,—a doctrine which, indeed, is not recognized by the common law. See Fidelity & Casualty Co. of New York v. Federal Express, Inc., 6 Cir., 136 F.2d 35, 40. It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person."

The principles stated in *Builders Supply Co.*⁶ were succinctly epitomized in the leading case of Union Stock Yards Co. of Omaha v. Chicago B. & Q. R. R. Co., 196 U.S. 217, 228, 25 S.Ct. 226, 229, 49 L.Ed. 453 (1905),⁷ as follows:

---

5. It is settled Pennsylvania law that a "master and servant" relationship is not a prerequisite for recovery of indemnity under the primary-secondary liability doctrine. See Gombar v. Schaeffer, 202 Pa. Super.Ct. 282, 289–290, 195 A.2d 527 (1963); Wise Shoes, Inc. v. Blatt, 107 Pa.Super. 473, 478–479, 164 A. 89 (1933).

6. The principles stated were cited and reaffirmed in Pittsburgh Steel Company v.

Patterson-Emerson-Comstock, Inc., 404 Pa. 53, 61–62, 171 A.2d 185 (1961); Helz v. Pittsburgh, 387 Pa. 169, 175, 127 A.2d 89 (1956).

7. *Union Stock Yards* was cited in *Builders Supply Co.* at 366 Pa. 328, 77 A.2d 368.

"In all these cases [where indemnity was sought] the wrongful act of the one held finally liable created the unsafe or dangerous condition from which the injury resulted. The principal and moving cause, resulting in the injury sustained, was the act of the first wrongdoer, and the other has been held liable to third persons for failing to discover or correct the defect caused by the positive act of the other." [8]

We applied the primary-secondary liability doctrine as spelled out in *Builders Supply Co.* in Quinones v. Township of Upper Moreland, 293 F.2d 237, 242 (3 Cir. 1961). The trial judge in the instant case more recently applied it in City of Pittsburgh v. United States, 236 F.Supp. 809–810–811 (W.D.Pa.1965), rev'd on other grounds 359 F.2d 564 (3 Cir. 1966).

■ Applying the principles stated to Marquette's cross-claim against Tecumseh, we are of the opinion that Marquette was entitled to judgment against Tecumseh. The latter was primarily responsible for manufacturing a defective compressor unit and failing to detect the defect by a proper inspection. Since Marquette's liability arose "because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one [Tecumseh] primarily responsible",[9] its liability is secondary.

For the reasons stated the judgment entered pursuant to the jury's verdict in favor of Tromza against Tecumseh and Marquette will be affirmed, and the judgment entered in favor of Tecumseh against Marquette on Marquette's cross-claim will be vacated with directions to the District Court to enter judgment on the cross-claim in favor of Marquette and against Tecumseh.

McLAUGHLIN, Circuit Judge (dissenting).

The majority opinion is based entirely upon the unwarranted assumption that its primary secondary liability doctrine is spelled out by the jury verdict. Therefore not only is the judgment in favor of Tecumseh on Marquette's cross-claim reversed but final judgment is to be entered thereon in favor of Marquette. Aside from everything else this arises out of a plain misconception of the trial record.

In addition to the complete refrigerator carrying a plate stating that the factory test pressure was 195 pounds as mentioned in the Court opinion, actually there was another plate on the front of the same complete refrigerator which was inscribed that it was manufactured by Marquette Appliances, Inc., Minneapolis, Minnesota; that it was Model No. 110, and that its serial number was AO9-F1AL-6304.

There was extremely strong evidence on behalf of Tecumseh that it had subjected the compressor to the proper trade pressure test at 235 to 250 pounds and the proper leak test by submersion in water; that after the accident the two halves of the compressor looked " * * * as if they had been subjected to excessive pressure because of the deformity that were [stet] in them. It also looked to me as if the weld were [stet] a good weld * * *." The witness was James R. Elliott, staff assistant to the Tecumseh general manager in charge of sales and engineering. Mr. Elliott had thirty years experience with the Company, a great part of which was in the engineering department. Under the direction of Dr. Berger, University of Pittsburgh metallurgic specialist, he had extensive tests made and his final conclusion as was that of Dr. Berger, was:

"I believe what occurred was that one hundred and seventy pounds pres-

---

8. It should be noted that in *Union Stock Yards* indemnity was disallowed because there the parties had both failed to discover, by proper inspection, a defect which was attributable to the fault of a third party.

9. 366 Pa. 327–328, 77 A.2d 371.

sure was put into this thing from a nitrogen tank and the tank was not securely shut off, and that the pressure went from the tank to the compressor shell and raised the pressure in the shell up to rupture pressure."

The compressor was made in 1950. Plaintiff had made some patch repairs to the refrigerator in 1962, the year prior to the accident. He did not state the nature of these. There was no evidence whatsoever offered by Marquette. Other than the representation on its refrigerator, there is nothing in the case to show Marquette made any pressure test at all.

All of the above was before the jury which found both defendants guilty of common proximate negligence causing the accident. As will be seen, the Court in effect told the jury it might consider the question regarding causation as to both defendants. The jury found them both guilty of primary negligence without any differentiation between them as to the degree of negligence.

The Court opinion finds the trial judge in plain error, not in his charge to the jury upon which the latter's verdict is founded, but because in his opinion, disposing of the various motions he noted, that " * * * in the light of the jury verdict the defendants must be found to be joint or concurrent tortfeasors * * *." Examination of the charge reveals it as errorless on the point involved. There was no objection to the charge on said point. The claim of bad welding by plaintiff against Tecumseh was discussed for over three pages. The admittedly affirmative duty of Marquette in accordance with the trade custom to conduct a pressure test of the whole pressure system up to 250 pounds was detailed. After that, the judge gave the jury the full picture of the alleged negligence of Tecumseh for faulty inspection. Then the Court, in discussing possible verdicts, told the jury:

"Your verdict will therefore specify what you found with respect to each of these defendants. The question of causation might come in, although this is somewhat conjectural, but as I re-

peat, you are the sole judges of the facts. Suppose it were found that the welding was negligent, but that the assembler could and should have discovered it. There might be a situation in which the manufacturer could say that his negligence was not the cause of the injury because it should have been found later on by somebody else, and that it was the later independent cause that really brought about the injury. Well, that is extremely unlikely. The more probable rule that you would apply is the rule of concurrent or joint negligence. If there were negligence in the manufacture and that continued on and contributed to the causing of the injury, but there also concurrently was negligence on the part of the assembler, then if you found negligence on the part of both defendants, and that the negligence of both defendants contributed to or was the proximate causing of the injury, then you could find a verdict against both defendants."

It would seem rather clear that the jury verdict of a flat finding of primary negligence against the two defendants is in accord with the Court's above quoted language to which there was no objection. And it would further seem that the Court's above expressed theory is sound under the facts and conceded Pennsylvania decisional law. Builders Supply Co. v. McCabe, 366 Pa. 322, 327–328, 77 A.2d 368, 371, 24 A.L.R.2d 319 (1951) holds:

"Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition

caused by the act of the one primarily responsible. In the case of concurrent or joint tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only common liability and not a primary and secondary one, even though one may have been very much more negligent than the other."

To same effect Pittsburgh Steel Co. v. Patterson, etc., Inc., 404 Pa. 53, 171 A.2d 185 (1961).

Marquette held itself out to the public, including plaintiff, as the manufacturer of the whole refrigerator. As such it accepted its responsibility at least as having tested the compressor up to 195 pounds. Plaintiff, in his story of developing pressure up to 170 pounds, rightly relied upon Marquette's manufacturers' commitment. Marquette's position was independent and primary. It had the affirmative duty of seeing to it that the compressor which it had adopted as its own not only was safe up to the Underwriters figure of 195 pounds but to the undenied trade usage pressure of from 235 to 250 pounds. That was no vicarious liability, that was its common duty at shoulder level with Tecumseh. It was so charged by the Court and so found by the jury. There is no excuse for the "two pronged negligence" of Tecumseh, so stressed by the majority, muddying the waters here. Tecumseh, rightly under the charge, could have been found primarily negligent both in the construction of the compressor and in its testing or of one or the other or neither. Marquette correctly under the charge could have been found primarily negligent in connection with its testing obligation or free from fault. Under the facts of this case if they were both found to blame, and they were, as Chief Justice Stern said in Builders Supply, supra, " * * * there is only a common liability and not a

primary and secondary one, even though one may have been very much more negligent than the other."

The parties had assigned the task of passing on the cross-claim to the trial judge. The latter, who had seen and heard the witnesses, particularly the reasonable, knowledgeable evidence of Mr. Elliott, had substantial support for ruling out the Marquette contention and should be upheld.