VELSICOL CHEMICAL CORPORATION, AN ILLINOIS COR-
PORATION, APPELLANT, *v.* ERNEST DAVIDSON,
DARLENE DAVIDSON, INDIVIDUALLY AND AS GUARD-
IANS AD LITEM OF SHERENE DAVIDSON, AND
ERNEST DAVIDSON, JR., AND THEIR MINOR CHIL-
DREN, RESPONDENTS.

No. 21147

VELSICOL CHEMICAL CORPORATION, AN ILLINOIS COR-
PORATION, APPELLANT, *v.* BILL BECKMYER'S PEST-
A-WAY CORPORATION, A NEVADA CORPORATION,
RESPONDENT.

No. 21446

May 16, 1991                                        811 P.2d 561

*Jolley, Urga, Wirth & Woodbury* and *Jay Earl Smith* and *Brian
E. Holthus,* Las Vegas; *Spriggs & Hollingsworth* and *Paul Gas-
ton,* Washington, D.C., for Appellant.

*Johns & Johns,* Las Vegas, for Respondents Davidsons.

*Barker, Gillock, Koning, Brown & Earley,* Las Vegas; *Cozen
& O'Connor* and *John L. Choate,* Columbia, South Carolina;
*Laxalt & Nomura,* Las Vegas, for Respondent Beckmyer.

# OPINION

*Per Curiam:*

This appeal involves a challenge by a non-settling defendant to the district court's approval of a settlement between a co-defendant and the plaintiff. Appellant, Velsicol Corporation (Velsicol), claims that the district court failed to consider certain factors in finding that the settlement was made in good faith.

[Headnote 1]

NRS 17.245 requires a settlement to be a "good faith" settlement, but gives little guidance in applying this standard. This court has never discussed the meaning of "good faith" as it is used in NRS 17.245. Velsicol argues for an interpretation consistent with California law which requires a hearing on good faith and the consideration of specific factors. Based upon the difference between the California statute and the applicable Nevada statute, we refuse to adopt the California rule. The determination of good faith in this situation should be left to the trial court, and the trial court's decision should not be disturbed absent an abuse of discretion.

Despite claims asserted in its brief, Velsicol fails to show that the trail court abused its discretion in finding that the settlement was made in good faith. Accordingly, we affirm the decision of the trial court.

In 1979, respondent, Pest-A-Way Corporation (Pestaway) applied Termide, a pesticide produced by appellant, Velsicol Corporation, to the partially constructed home of respondents, Ernest and Darlene Davidson (Davidsons). The soil treatment guarantee states that the Termide was "power sprayed" into the soil.

Four years later, after the Davidsons had their home inspected, Thomas Smigel of the Nevada Department of Agriculture determined that the Termide had been improperly applied at the Davidson home. In September of 1984, the Davidsons filed a verified complaint with the Nevada Department of Agriculture alleging misuse of the Termide which resulted in continued illness to the Davidson family.

A hearing officer of the Department of Agriculture found that Termide was applied to the Davidson residence by broadcast spraying and that such an application was not contrary to the product's labeling and therefore not improper. The hearing officer also found that a specific instruction prohibiting broadcast spraying of Termide was not added to the Termide label until mid-1980.

Subsequently, the Davidsons filed a complaint in district court

alleging injuries resulting from their exposure to Termide. The Davidsons' complaint alleged that Pestaway improperly applied the product to the crawlspace under their home, that the product was unsafe for its intended use and that inadequate warning was provided regarding application to crawlspaces.

In January of 1990, Pestaway reached a settlement with the Davidsons agreeing to pay the Davidsons $50,000.00 (later raised to $55,000.00). On February 6, 1990, Pestaway moved for a determination that the settlement was made in good faith and for certification of the settlement pursuant to NRCP 54(b). After briefs were filed by all parties, the trial court entered an order certifying the settlement and subsequently entered an order dismissing the Davidsons' action against Pestaway with prejudice. On appeal, Velsicol challenges the district court's orders.

Appellant contends that the following factors should have been considered by the trial court in determining good faith: (1) the settling defendant's insurance coverage and financial condition; (2) the relative potential liability of the parties; and (3) the reasonable range of settling defendant's liability.

NRS 17.245 addresses the legal effect of releases and settlements. The statute specifically provides that a release is given effect when it is given in good faith.[1] The settlement entered into by Pestaway and the Davidsons resulted in the release given to Pestaway by the Davidsons. This case ultimately amounts to a dispute over the definition of "good faith" as it is used in NRS 17.245. Velsicol contends that the district court failed to take into consideration certain facts and thereby defined "good faith" too narrowly. We disagree.

Velsicol's contention that certain factors must be considered by the court in approving a settlement relies upon the California rule found in Tech-Bilt, Inc. v. Woodward-Clyde & Assoc., 698 P.2d 159 (Cal. 1985) and Commercial Union Ins. Co. v. Ford Motor Company, 640 F.2d 210 (9th Cir. 1981) (applying California law). In *Tech-Bilt,* the California Supreme Court held that the

---

[1]NRS 17.245 provides:

Effect of release or covenant not to sue. When a release or a covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

2. It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

dual objectives of the contribution statute are "equitable sharing of the costs among the parties at fault, and second, encouragement of settlements." *Tech-Bilt,* 698 P.2d at 163 (citations omitted). Quoting from River Garden Farms, Inc. v. Superior Court, 26 Cal.App.3d 986, 997 (1972), the *Tech-Bilt* court took an expansive view of "good faith" finding that:

> Lack of good faith encompasses many kinds of behavior. . . . Thus, formulation of a precise definition of good faith is neither possible nor practicable. The Legislature has here incorporated by reference the general equitable principle of contribution law which frowns on unfair settlements, *including those which are so poorly related to the value of the case as to impose a potentially disproportionate cost on the defendant ultimately selected for suit.*

*Tech-Bilt,* 698 P.2d at 163 (emphasis in original).

The court held that the policies of contribution would be disserved by an approach which emphasized the policy of encouraging settlement to the exclusion of equitable allocation of costs among tortfeasors. *Id.* at 166. Finally, the *Tech-Bilt* court concluded that a trial court must consider "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Id.*

In construing NRS 17.245 the United States District Court for the District of Nevada agreed with the California rationale and held that:

> Factors to be considered by the Court in assessing whether a settlement is in good faith is [sic] the amount paid in settlement, the allocation of the settlement proceeds among plaintiffs, the insurance policy limits of settling defendants, the financial condition of settling defendants, and the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants.

In Re MGM Grand Hotel Fire Litigation, 570 F.Supp. 913, 927 (D.Nev. 1983). The court in *MGM* concluded that the primary factor in determining good faith is the price of the settlement. *Id.* at 928. This court has never addressed this issue. The federal court was forced to interpret the good faith requirement and apparently assumed that Nevada would follow the rule adopted by California.

The California Code of Civil Procedure section, which the court interpreted in *Tech-Bilt,* provides more specific direction than the Nevada statute with respect to determination of good

faith.[2] The California statute mandates a hearing on the issue of good faith while the Nevada statute is silent on the subject. We see this distinction as significant.

Because there is no specific language in the Nevada statute requiring a hearing on the issue of good faith, we have decided not to adopt the California rule. We hold that determination of good faith should be left to the discretion of the trial court based upon all relevant facts available, and that, in the absence of an abuse of that discretion, the trial court's findings should not be disturbed.

---

Velsicol contends that it was not negligent in any way based upon the labeling of the Termide and that Pestaway is primarily, if not exclusively, liable for any injuries suffered by the Davidsons. Velsicol claims that the record indicates that any injuries suffered by the Davidsons occurred solely as a result of the misapplication of the Termide by Pestaway. Although the Davidsons claim that Pestaway improperly applied the Termide, they also claim in their amended complaint that Velsicol knew of the dangers of Termide and failed to give adequate warnings and instructions regarding the product's application.

As support for its contention that Pestaway is primarily liable, Velsicol cites the fact that the label on Termide at the time the Davidsons' house was sprayed had been approved by the EPA. Velsicol also points to the deposition of Thomas Smigel of the Nevada Department of Agriculture who stated that, in his view, the label on Termide was clear and that he was very surprised by the decision of the hearing officer.

---

[2]California Code of Civil Procedure Section 877.6 provides in pertinent part:

> (a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith ·of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice thereof in the manner provided . . . .
> (b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.
> (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.
> (d) The party asserting the lack of good faith shall have the burden of proof on that issue.
> . . . .

Respondents have a very different view of the case. Pestaway points to evidence in the record indicating that Velsicol is primarily liable for any injuries suffered by the Davidsons. In a letter from Velsicol to the Nevada Department of Agriculture, a Velsicol official admits that in mid-1980 a change was made to the Termide label specifically prohibiting broadcast spraying of Termide to crawlspaces. The reason for the change is said to be the fact that some pest control operators applied Termide to crawlspaces by broadcast spraying. Further, a hearing officer of the Nevada Department of Agriculture found no clear and convincing evidence that Pestaway applied Termide improperly or in a method contrary to the labeling of the product. There is ample evidence from which the trial court could have concluded that Velsicol was primarily liable and that Pestaway was not negligent.

Finally, appellant challenges the settlement based upon its amount. Velsicol cites numerous California cases for the proposition that the good faith requirement is not met when the settlement amount is grossly disproportionate to the settling defendant's fair share of damages. *See* Grand Terrace v. Superior Court (Boyter), 192 Cal.App.3d 1251 (1987); Torres v. Union Pacific R.R. Co., 157 Cal.App.3d 499 (1984); American Motorcycle Assn. v. Superior Court, 578 P.2d 899 (Cal. 1978). The actual amount of damages suffered by the Davidsons is not known. The Davidsons' amended complaint alleges damages in excess of $40,000.00, while Velsicol (without citing to the record) claims that the Davidsons place an extraordinarily high value upon their damages, "apparently several hundred thousand dollars." Based upon the record or the lack thereof, appellant has failed to show that the settlement amount agreed to by Pestaway ($55,000.00) is disproportionately lower than Pestaway's fair share of damages.

We cannot conclude from the record that the trial court abused its discretion in finding that the settlement was made in good faith. Accordingly, we affirm the trial court's orders approving the settlement.

MOWBRAY, C. J., SPRINGER, STEFFEN, and YOUNG, JJ., and CHRISTENSEN, D. J.,[3] concur.

---

[3]The Honorable Bob Miller, Governor, designated The Honorable Carl J. Christensen, District Judge of the Eighth Judicial District, to sit in this case in place of THE HONORABLE ROBERT E. ROSE, Justice, who voluntarily disqualified himself. Nev. Const. art. 6, § 4.