OPINION
 

 By the Court, Maupin, J.:
 

 In this appeal, we consider the procedures for perfecting, as part of a settlement, claims for contribution among joint tortfeasors and implied indemnity. As discussed below, these remedies allow persons extinguishing their individual tort liabilities to seek reimbursement in part or in full from other responsible parties.
 

 The resolution of this appeal centers in large part upon several related statutory principles.
 
 [1]
 
 First, a joint tortfeasor seeking to perfect a contribution claim in the context of a settlement must first extinguish the liabilities of the other joint tortfeasors against whom contribution recovery is sought. Second, a tortfeasor seeking to
 
 *647
 
 perfect an implied indemnity claim in the context of a settlement is not required to extinguish the liabilities of joint tortfeasors against whom indemnity recovery is sought. Third, any joint tort-feasor in a multi-defendant tort action may obtain protection from claims of contribution and implied indemnity by settling with the tort claimant in good faith under NRS 17.245. Fourth, the district court’s discretion in determining the good or bad faith of a particular settlement is not talismanic, but rather, must be exercised based upon a myriad of considerations.
 

 SUMMARY OF THE PROCEEDINGS IN DISTRICT COURT
 

 Samuel Woods, Jr., brought the action below against respondent, Robert Vincent, and appellant The Doctors Company (TDC), TDC’s affiliate, National Marketing Administration (NMA), and NMA’s agents, David Hemphill and Edwin Hemphill.
 
 [2]
 
 The suit concerned attempts by Vincent, an independent insurance agent, to place medical insurance coverage for Woods with TDC, TDC’s acceptance of that coverage, and its ultimate rejection of a claim for benefits. Shortly before trial, Woods settled with the TDC defendants for $2.75 million and with Vincent for $20,000. Both settlements were approved by the district court as in good faith under NRS 17.245. In this appeal, TDC contends that the district court abused its discretion in approving Vincent’s settlement, which effectively cut off TDC’s claims against Vincent for contribution and implied indemnity. Woods is not a party to this appeal.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 In February 1998, Woods sought short-term medical coverage through Vincent, an independent insurance agent. After some inquiries, Vincent assisted Woods in completing a TDC form application for coverage. Woods claimed that he paid the initial premium to TDC by delivering a check to Vincent on February 7, 1998. Vincent claimed that he or his assistant mailed the check with the TDC application form to TDC’s insurance administrator, NMA, shortly before midnight on February 9, 1998. The forwarding envelope bore Vincent’s private meter postage mark of that date. Because Vincent was not a formally designated agent of TDC at that time, he included his own written application to act as a TDC agent with Woods’ insurance application. Either Vincent or Woods checked a box on the TDC application form indicating that the effective date of coverage was to be “the date after postmark.” Notwithstanding Vincent’s representations concerning the date of
 
 *648
 
 mailing, the United States Postal Service (USPS) did not place its postmark on the envelope until February 12, 1998.
 

 NMA received the envelope on February 17, 1998, and processed the application. Evidence indicated that NMA initially accepted the coverage as of February 10, 1998, apparently based upon Vincent’s postage meter mark of the previous day. However, based upon the USPS postmark, coupled with the request that the effective date of the coverage commence “the date after postmark,” NMA changed the effective date of the policy to February 13, 1998.
 

 Ironically, Woods was seriously injured in an accident at his home on February 11, 1998, between the two possible starting dates for coverage, February 10 and 13, 1998. Based upon the USPS postmark date of February 12, 1998, TDC ultimately denied Woods’ claims for approximately $350,000 in medical expenses. In this, TDC relied on a preexisting-condition exclusion in its policy.
 

 Woods filed his complaint in district court against Vincent and the TDC defendants seeking special, general and punitive damages. The suit against Vincent included claims of negligence, breach of fiduciary duty and intentional infliction of emotional distress. The claims against the TDC defendants included: (1) negligence, (2) breach of contract, (3) estoppel, (4) breach of the implied covenant of good faith and fair dealing, (5) unfair trade practices, (6) breach of fiduciary duty, and (7) infliction of emotional distress. Woods also alleged that TDC was vicariously liable for Vincent’s actions on an agent/principal theory.
 

 The question of which postage mark triggered coverage became central to the controversy during discovery. On one hand, the decisions to change the effective date of coverage and reject Woods’ claim for benefits could reasonably be justified by the questionable circumstances under which Vincent forwarded the application and Woods’ coincidental accident within the disputed coverage window. In this, testimony from postal service witnesses implied that Vincent backdated his postage meter to conceal his failure to timely submit the application. On the other hand, several NMA employees gave conflicting deposition testimony as to what constituted a postmark for purposes of establishing effective dates for such policies, and TDC apparently lacked policies and procedures governing which postmark triggered the effective date of coverage under such circumstances. In its totality, evidence against TDC supported Woods’ claims that (1) TDC originally accepted coverage as of February 10, 1998, thus initially recognizing Vincent’s postage meter mark as stimulating commencement of coverage; (2) TDC only rejected coverage upon learning of Woods’ claim for medical benefits; (3) TDC’s separate conduct led to its contractual and extra-contractual exposure; and (4) given the initial acceptance of
 
 *649
 
 coverage as of February 10, 1998, and given that the TDC application form seemingly empowered Vincent to set the coverage commencement date, TDC treated Vincent as its agent for the purpose of placing coverage.
 

 TDC moved for summary judgment on the coverage and vicarious liability issues.
 
 [3]
 
 After the district court denied the motion in its entirety, TDC evaluated the potential risk of a substantial compensatory and punitive damages verdict. Shortly before trial, based upon the potentially negative evidence that surfaced during discovery, TDC settled with Woods for $2.75 million. The TDC settlement did not, by its terms, extinguish Vincent’s liability.
 

 All parties stipulated in open court to the statutory good faith of the settlement between Woods and the TDC defendants. At the hearing memorializing the TDC settlement, Vincent’s counsel reported that he too had settled with Woods, but for the relatively nominal sum of $25,000.
 
 [4]
 
 After TDC refused to agree to the good faith of Vincent’s settlement, Vincent moved for its approval under NRS 17.245. The briefs for and against approval comprehensively summarized the history of the case. Although noting the disparity between the two settlements, Vincent argued that he had done nothing wrong, and that his liability was only tangential in relation to TDC’s mishandling of the claim,
 
 i.e.,
 
 TDC’s wrongful refusal to pay benefits in connection with Woods’ accident. TDC argued that the Vincent/Woods’ settlement was not an arm’s-length arrangement, that the settlement was improperly calculated to cut off its vested contribution and indemnity rights, that its exposure was entirely related to Vincent’s failure to timely forward Woods’ insurance application, and that Vincent’s nominal settlement was grossly disproportionate to the relative degree of his exposure to Woods. TDC underscored its arguments that Vincent’s settlement was entered into in bad faith with the fact that Vincent’s errors- and-omissions insurance provided liability coverage with policy limits of $500,000.
 

 Thereafter, without a hearing, the district court determined that Vincent settled with Woods in good faith:
 

 [Woods] has determined that settlement with Vincent is in his economic best interest. Therefore, [Woods] is willing to settle this matter for the amount of [$25,000], Based upon the record or the lack thereof at this point, TDC has failed to show that the [$25,000] settlement agreed to by [Woods] is
 
 *650
 
 disproportionately lower than Vincent’s fair share of the damages.
 

 Accordingly, the district court approved Vincent’s settlement and entered a final judgment. On appeal, TDC challenges the order of approval because it effectively barred TDC’s claims for contribution or implied indemnity against Vincent.
 
 [5]
 

 We affirm in part, reverse in part and remand for further proceedings consistent with this opinion. TDC failed to perfect its contribution rights, thus rendering moot the question of whether the good-faith ruling barred TDC’s potential contribution claims against Vincent. Accordingly, we affirm the good-faith determination below insofar as it relates to TDC’s contribution claims. However, the district court apparently failed to assess the good faith of Vincent’s settlement as it related to TDC’s potential claims for implied indemnity. Thus, the matter is reversed in part and remanded for the district court to determine whether the settlement was in good faith for the purpose of extinguishing TDC’s potential implied indemnity rights.
 

 DISCUSSION
 

 Although we recognize that TDC’s separate contribution/indemnity action is not before the court in this appeal, one of the purposes of the good-faith ruling below was to preempt that separate action. Consequently, and as is discussed below, the merits of the separate claims by TDC against Vincent become part of the overall calculus for determining whether the district court abused its discretion in its good-faith ruling. Thus, to the degree necessary to resolve this appeal, we will discuss the interplay between the good-faith ruling in the action below and the merits of the contribution/indemnity action. We also recognize that the procedures for perfecting contribution and indemnity claims in the context of settlements are rarely used and that an understandable level of confusion and uncertainty has developed concerning them. For these reasons, we have determined to provide guidance for future use of these devices by the bench and bar.
 

 The remedies of contribution and implied,
 
 i. e.,
 
 noncontractual indemnity allow parties extinguishing tort liabilities by way of settlement or payment of judgments to seek recovery from other potential tortfeasors under equitable principles. Contribution is a creature of statute,
 
 [6]
 
 while implied indemnity is generally a creation
 
 *651
 
 of the common law. Under the Nevada statutory formulation, the remedy of contribution allows one tortfeasor to extinguish joint liabilities through payment to the injured party, and then seek partial reimbursement from a joint tortfeasor for sums paid in excess of the settling or discharging tortfeasor’s equitable share of the common liability.
 
 [7]
 
 Generally stated, implied indemnity allows a complete shifting of responsibility to an “indemnity obligor” when the party seeking indemnity has extinguished its liabilities incurred as a result of the indemnity obligor’s “active” fault.
 
 [8]
 
 Under NRS 17.265, the provisions of the contribution statutory scheme do not impair rights of indemnity and, more particularly, “[wjhere one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.”
 
 [9]
 

 TDC contends that the district court abused its discretion in approving Vincent’s settlement as in good faith. Under NRS 17.245, this finding, if upheld, effectively immunizes Vincent from liability on TDC’s contribution and implied indemnity claims:
 

 1.
 
 When a release
 
 or a covenant not to sue or not to enforce judgment
 
 is given in good faith
 
 to one of two or more persons liable in tort for the same injury . . . :
 

 (a) It does not discharge any of the other tortfeasors from liability for the injury . . . unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by tire release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
 

 (b)
 
 It discharges the tortfeasor to whom it is given from all liability for contribution and for equitable indemnity to any other tortfeasor.
 

 (Emphasis added.)
 

 In
 
 In re MGM Grand Hotel Fire
 
 Litigation,
 
 [10]
 
 the Nevada Federal District Court embraced the following factors in evaluating good-faith issues under NRS 17.245:
 

 [t]he amount paid in settlement, the allocation of the settlement proceeds among plaintiffs, the insurance policy limits of
 
 *652
 
 settling defendants, the financial condition of settling defendants, and the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants.
 
 [11]
 

 While the
 
 MGM
 
 factors may be relevant to a district court’s determination of good faith, we chose not to adopt them as exclusive criteria for determinations of good or bad faith in
 
 Velsicol Chemical v. Davidson.
 

 [12]
 

 In
 
 Velsicol,
 
 we held that the determination of a good-faith settlement “should be left to the discretion of the trial court based upon all relevant facts available, and that, in the absence of an abuse of that discretion, the trial court’s findings should not be disturbed.”
 
 [13]
 
 In such an analysis, a district court may, in addition to the specifically articulated
 
 MGM
 
 factors, assess the relative liability permutations of the particular contribution or indemnity action known to it, including the strengths and weaknesses of the contribution or indemnity claims. This standard of review vests the district court with considerable discretion.
 

 Because the rules concerning the perfection of contribution and implied indemnity claims are not identical, we will deal with the good-faith issues discrete to each of these potential separate claims.
 

 The good-faith ruling in connection with TDC’s claim of contribution under NRS 17.225
 

 TDC argues that the district court’s erroneous good-faith ruling improperly voided its perfected contribution rights. TDC reasons that Vincent, as the last defendant to settle, cannot, by obtaining a good-faith determination, cut off or extinguish contribution rights perfected by previously settled defendants. While this argument is valid as far as it goes, TDC’s counsel conceded at the oral argument of this appeal that TDC’s settlement on behalf of the TDC defendants, by its terms, did not extinguish Vincent’s liability.
 
 [14]
 
 This omission is fatal to TDC’s potential contribution claim as a matter of law.
 

 In this connection, NRS 17.225(3) provides:
 

 A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor
 
 *653
 
 whose liability for the injury or wrongful death is not extinguished by the settlement ....
 

 Under NRS 17.225(3), once TDC settled without extinguishing Vincent’s liability, Vincent became immune to TDC’s contribution action.
 
 [15]
 
 Accordingly, the ultimate approval of Vincent’s settlement as in good faith did not, in any respect, cut off perfected contribution rights held by TDC.
 
 [16]
 
 This being the case, TDC’s failure to perfect its contribution rights in the first instance renders moot any appellate assignments of error concerning the effect of the good-faith ruling on that claim. Thus, insofar as the good-faith ruling had implications for a potential contribution claim by TDC against Vincent, the district court committed no abuse of discretion in approving the settlement.
 
 [17]
 

 Given the express terms of NRS 17.225, counsel for TDC agreed at the oral argument of this appeal that reversal of the district court’s order would only entitle TDC to press its claim for implied indemnity against Vincent.
 

 The good-faith ruling and TDC’s claim of implied indemnity under NRS 17.245
 

 ‘ ‘When one party is subject to liability, which, as between that party and another, the other should bear, the first party is entitled to full indemnity.”
 
 [18]
 

 “The right of indemnity rests upon a difference between the primary [active] and the secondary [passive] liability of two persons, each of whom is made responsible by the law to an injured party.” The difference between primary and secondary liability depends on a difference in the character or kind of wrongs that cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person.
 
 [19]
 

 
 *654
 
 “Evidence of only ‘passive negligence’ ... is insufficient to establish ‘active wrongdoing’ by a party seeking indemnity.”
 
 [20]
 
 Additionally, “[i]n order for one tortfeasor to be in a position of secondary responsibility vis-a-vis another tortfeasor, and thus be entitled to indemnification, there must be a preexisting legal relation between them, or some duty on the part of the primary tort-feasor to protect the secondary tortfeasor.”
 
 [21]
 

 TDC bases its implied indemnity claim upon the notion that, but for Vincent’s conduct, TDC would never have been placed in the coverage dilemma described above. In short, to establish a claim of indemnity against Vincent, TDC must demonstrate that Vincent was primarily liable for the injuries to Woods.
 
 [22]
 

 We decided in
 
 Medallion Development v. Converse Consultants
 

 [23]
 

 that claims for implied indemnity were not barred by a finding that an indemnity obligor settled in good faith under NRS 17.245. However, following our decision in
 
 Medallion,
 
 the 1997 Nevada Legislature amended NRS 17.245 to provide that a good-faith settlement insulates the settling party from claims of both contribution and implied indemnity. But, in contrast to TDC’s contribution claim, TDC’s failure to extinguish Vincent’s liability does not bar TDC’s claim of implied indemnity.
 
 [24]
 
 Because the district court did not hold an evidentiary hearing and made no findings of fact concerning the indemnity claim, we review the record independently under
 
 MGM
 
 and
 
 Velsicol
 
 to determine whether the district court committed reversible error in approving the Vincent settlement as in good faith.
 
 [25]
 

 TDC attacks the good faith of the settlement on the following grounds: that it was entered into without arm’s-length negotiations, that the payment was nominal in relation to Vincent’s actual liability to Woods, that it represented only a minute portion of Vincent’s policy limits, that it was improperly calculated to cut off TDC’s rights against Vincent, and that the settlement did not fairly account for Vincent’s potential indemnity liability.
 

 [Headnote 12]
 

 As noted, the district court was not restricted to the
 
 MGM
 
 factors for determining good faith, including the fact that Vincent set-
 
 *655
 
 tied for an amount representing only a small fraction of his insurance limits. Relative culpability of the parties to an implied indemnity action is also an important factor in any determination concerning good faith under NRS 17.245. Here, TDC would be obligated to pay the benefits only in the event the coverage was placed on an effective date before Woods’ accident; that is, if the accident occurred after the “date after postmark.” Thus, TDC could arguably enjoy a right of implied indemnity if it could persuade the fact-finder in the subsequent indemnity action that Vincent fraudulently backdated his postage meter to cover up his failure to timely forward the application to TDC, and that TDC’s actions in accepting and then rejecting coverage were passive in relation to Vincent’s fraud. However, the litigation below was marked by considerable disputes over whether TDC initially accepted the coverage effective before the accident, whether Vincent fraudulently backdated the application, and whether Vincent’s role in the matter affected acceptance of the coverage,
 
 e.g.,
 
 whether Vincent’s date of postmark governed acceptance of the risk. Because resolution of these highly contested issues were in large part determinative of whether TDC was actively at fault in its refusal to cover Woods’ February 11, 1998, accident, the validity of the implied indemnity claim was far from clear.
 

 We acknowledge, as do the parties, that the TDC settlement was designed to account for its potential joint and several exposures to awards of special and general compensatory damages, and its several exposure to Woods’ claim of punitive damages. To the extent that TDC’s settlement was intended to extinguish its liability in connection with its active fault, TDC would have no substantive claim in implied indemnity, regardless of whether Vincent’s settlement was entered into in good faith under NRS 17.245.
 
 [26]
 
 Thus, an erroneous ruling on that issue would only prejudice TDC to the extent that its settlement extinguished liabilities that could, as a matter of law, be subject to a right of implied indemnity. Again, although a claim of active fault on the part of the party seeking indemnity in connection with monies paid in settlement is an affirmative defense to the separate indemnity action, a district court may consider active fault issues in deciding whether to approve a separate settlement by the indemnity defendant as in good faith under NRS 17.245.
 

 The district court’s order of approval in this case analyzes the good-faith issue as it relates to the potential contribution claim:
 
 *656
 
 “[b]ased on the record or lack thereof at this point, TDC has failed to show that the [$25,000] agreed to by [Woods] is disproportionately lower than Vincent’s fair share of the damages.” But it contains no such analysis of the settlement in terms of its implication for TDC’s potential implied indemnity claim. As noted, the litigation below over the good faith of Vincent’s settlement was marked by highly contested issues of fact that were in large part determinative of whether TDC was actively at fault in its refusal to cover Woods’ accident. Because the district court apparently approved the settlement as in good faith without evaluating the merits of the potential indemnity claim, and because the district court is in a far superior position to evaluate the factual issues underlying this good-faith determination, we reverse the order insofar as it relates to TDC’s separate indemnity claims and remand this matter for a complete analysis, taking into consideration the
 
 MGM
 
 factors, the extent to which the settlement may not have reflected liability for compensatory and punitive damages arising from the claims of active fault against TDC, and whether the Vincent settlement was otherwise fair in relation to TDC’s chances of success on the substantive implied indemnity claim.
 
 [27]
 
 In this way, the district court can completely determine whether Vincent’s settlement should pass muster under NRS 17.245.
 
 [28]
 

 CONCLUSION
 

 A tortfeasor seeking to perfect a contribution claim through a prejudgment settlement process must pay an amount in excess of his equitable share of liability and must explicitly extinguish the li
 
 *657
 
 ability of the joint tortfeasor
 
 [29]
 
 from whom contribution is sought as part of the settlement. The substantive right to contribution is governed by a factual determination as to whether the payment has exceeded the settling party’s equitable share of the common liability.
 
 [30]
 
 A party seeking to perfect contribution as part of a settlement is not required to obtain a formal ruling that his settlement is in good faith. However, a tortfeasor seeking protection against claims of contribution by nonsettling tortfeasors should obtain a formal ruling that its settlement is made in good faith under NRS 17.245.
 
 [31]
 

 A tortfeasor seeking to perfect an implied indemnity claim via settlement is not required to extinguish the liability of the indemnity defendant. This having been said, failure to extinguish the liability of the indemnity defendant leaves the claim in some jeopardy, given the possibility that the district court, as in this case, could approve a separate subsequent settlement between the claimant and the potential indemnity defendant. Accordingly, a settlement that extinguishes the liability of the indemnity plaintiff and the indemnity defendant preempts the statutory protection provided under NRS 17.245 for an indemnity defendant who attempts to settle with the underlying plaintiff at a later time. A tortfeasor seeking to perfect an implied indemnity claim as part of a settlement is not required to obtain a formal ruling that the settlement is in good faith unless he wishes protection from implied indemnity claims against him. And a tortfeasor seeking a unilateral settlement and protection against claims of implied indemnity by nonsettling tortfeasors should obtain a formal ruling that its settlement is made in good faith under NRS 17.245.
 

 Good-faith determinations are governed by a myriad of considerations as discussed in
 
 MGM
 
 and
 
 Velsicol,
 
 including the liability permutations arising from the merits of the contribution and indemnity claims. A settling defendant seeking protection from contribution and implied indemnity claims has the burden of proving that the settlement was in good faith. And we review good-faith determinations under NRS 17.245 under an abuse of discretion stan
 
 *658
 
 dard.
 
 [32]
 
 We also reiterate our prior pronouncements that relief in contribution and implied indemnity is unavailable to the extent those claims arise from the intentional or punitive liability of the party seeking such relief.
 
 [33]
 

 In summary, we conclude that, under NRS 17.225(3), TDC’s appellate claims concerning the district court’s good-faith ruling have been rendered moot to the extent that TDC sought to preserve its contribution claim.
 
 [34]
 
 Thus, we affirm the good-faith order insofar as it relates to TDC’s separate contribution claim. However, because the district court apparently failed to consider the good-faith issues with regard to TDC’s efforts to preserve an implied indemnity claim, we reverse in part and remand this matter for the district court to undertake a complete analysis of the settlement, taking into consideration the
 
 MGM
 
 factors, the extent to which the settlement may not have reflected liability for compensatory and punitive damages arising from the claims of active fault, and whether the Vincent settlement was fair based upon the considerable permutations of liability in connection with the substantive implied indemnity claim.
 

 Shearing, C. J., and Rose, J., concur.
 

 [1]
 

 See
 
 NRS 17.225 to 17.305.
 

 [2]
 

 TDC, NMA, and NMA’s agents, David Hemphill and Edwin Hemphill, will be referenced collectively as TDC or the TDC defendants. NMA is referred to individually only where necessary for clarity.
 

 [3]
 

 We note that TDC’s motion for summary judgment was narrowly worded, seeking a determination of noncoverage and a ruling that it was not vicariously responsible for any wrongdoing by Vincent. In his opposition to the motion, Vincent acknowledged that TDC was not responsible for any wrongdoing by him or on his behalf.
 

 [4]
 

 The settlement actually involved payment of $20,000.
 

 [5]
 

 TDC filed a separate contribution and indemnity action in the district court against Vincent, which the district court stayed pending our resolution of TDC’s appeal in this case.
 

 [6]
 

 See
 
 NRS 17.225 to 17.305.
 

 [7]
 

 See Medallion Dev. v. Converse Consultants,
 
 113 Nev. 27, 31-34, 930 P.2d 115, 118-20 (1997).
 

 [8]
 

 Id.
 

 [9]
 

 Because TDC has not indicated whether its rights of indemnity foreclose its contribution claims under NRS 17.265, we have not drawn any conclusions in that regard.
 

 [10]
 

 570 F. Supp. 913, 927 (D. Nev. 1983).
 

 [11]
 

 Id.
 

 [12]
 

 107 Nev. 356, 360, 811 P.2d 561, 563 (1991).
 

 [13]
 

 Id.
 

 [14]
 

 According to counsel, the release documents concerning the TDC settlement did not mention Vincent or the preservation of any claims against him for contribution or implied indemnity. Although the TDC release documents were not included in the record on appeal, counsel’s concession is impliedly confirmed by the separate stipulation and order for dismissal of Vincent from the Woods’ lawsuit.
 

 [15]
 

 Accordingly, Vincent did not need the protection of the good-faith ruling, at least as to TDC’s contribution claims.
 

 [16]
 

 NRS 17.245(l)(a) and NRS 17.285(4) reinforce this conclusion. NRS 17.245(l)(a) provides that a release given in good faith to one of two or more persons liable in tort for the same injury “does not discharge any of the other tortfeasors from liability . . .
 
 unless its terms so provide.”
 
 (Emphasis added.) NRS 17.285(4) bars contribution rights unless the party seeking contribution has agreed to discharge the common liability during the pendency of a filed action, has paid the liability and commenced the contribution action within one year thereafter.
 

 [17]
 

 In this we do not reach the substantive viability of the good-faith ruling as it relates to TDC’s potential contribution claim.
 

 [18]
 

 Black & Decker v. Essex Group,
 
 105 Nev. 344, 345, 775 P.2d 698, 699 (1989).
 

 [19]
 

 Id.
 
 (quoting
 
 Tromza v. Tecumseh Products Company,
 
 378 F.2d 601, 605 (3d Cir. 1967)).
 

 [20]
 

 Id.
 

 [21]
 

 Id.
 
 at 346, 775 P.2d at 699-700.
 

 [22]
 

 See Medallion Development,
 
 113 Nev. at 31-34, 930 P.2d at 118-20.
 

 [23]
 

 Id.
 

 [24]
 

 NRS 17.225(3), discussed above, only addresses contribution claims.
 

 [25]
 

 None of the parties below requested a formal hearing on the good-faith motion. Although formal hearings are not required in such matters, the district court is empowered to hold hearings, evidentiary or otherwise, either on its own motion or upon request of the parties. The submission without a hearing in this instance is consistent with the Local Rules of Practice of the Second Judicial District of Nevada.
 

 [26]
 

 See Reid
 
 v.
 
 Royal Insurance Co.,
 
 80 Nev. 137, 143-46, 390 P.2d 45, 48-49 (1964) (noting that a person may not seek implied indemnity when found in pari delicto with the person against whom indemnity recovery is sought);
 
 see also Evans v. Dean Witter Reynolds, Inc.,
 
 116 Nev. 598, 5 P.3d 1043 (2000).
 

 [27]
 

 On remand, the parties may litigate the extent to which the TDC settlement was devoted to paying its passive liabilities it alleges were caused by Vincent’s active fault. From that point of analysis, the district court may determine from the record in this case whether TDC’s indemnity claim is potentially flawed to the extent that the relatively small settlement satisfied NRS 17.245, or has enough viability that the settlement should be rejected thereunder. As noted, TDC cannot obtain an implied indemnity award in connection with its separate active fault and additional punitive liability.
 

 [28]
 

 We recognize that the 1997 amendments to NRS 17.245, precluding indemnity actions where the indemnity obligor’s settlement is in good faith, are not in doctrinal harmony with a right of implied indemnity. Such factors as the possibility that the putative indemnity obligor may be completely exonerated, which bear on the good faith of the obligor’s settlement, do not account for the fact that a full shifting of liability may be justified under the facts at a trial, and that a nominal good-faith settlement should, as a matter of public policy, never insulate a tortfeasor from indemnity liability. However, the Legislature has determined that the preeminent consideration is encouragement of settlement and has thus included indemnity as one of the remedies foreclosed in the event of a good-faith settlement.
 

 We also note that Nevada has not yet embraced a doctrine of implied partial indemnity.
 

 [29]
 

 A party seeking to perfect a contribution claim via settlement against a potential contribution defendant whose name is unknown, may extinguish the potential contribution defendant’s liability by naming the person or entity or by fictitious name in the release and reserving the claim in the stipulation for dismissal.
 

 [30]
 

 A contribution defendant is liable only to the extent of its individual equitable share of the common liability.
 
 See
 
 NRS 17.225(2).
 

 [31]
 

 By implication, NRS 17.245(1) provides a nonsettling defendant a form of contribution as to prior settlements in good faith because such settlements under subsection 1(a) reduce the claims against nonsettling tortfeasors by the amount of the settlement,
 
 i.e.,
 
 through an equitable set-off.
 

 [32]
 

 We have not reached any issues concerning claims for contribution or indemnity lodged after entry of judgment against the tortfeasors. We note in passing that, absent a settlement, payment of the entire judgment preserves the right to pursue a contribution or implied indemnity claim.
 

 [33]
 

 See Evans,
 
 116 Nev. 598, 5 P.3d 1043;
 
 Black & Decker,
 
 105 Nev. 344, 775 P.2d 698;
 
 Piedmont Equip. Co. v. Eberhard Mfg.,
 
 99 Nev. 523, 665 P.2d 256 (1983);
 
 Reid,
 
 80 Nev. 137, 390 P.2d 45.
 

 [34]
 

 We stress that this conclusion has no bearing on whether the district court correctly decided the merits of the good-faith issue with respect to TDC’s attempts to perfect a contribution claim under NRS 17.225 to 17.305.